IN THE MATTER OF SUPREME COURT LICENSE FEES

5-5882                                483 S.W. 2d 174

Opinion delivered January 19, 1972

PER CURIAM

On November 15, 1971, this Court entered the following order with respect to the annual license fees paid by attorneys:

Effective January 1, 1972, the Supreme Court license fees shall be, and are hereby, increased from $2.00

per year to $17.00 per calendar year. Fees will be payable between January 1 and March 1, after which a $1.00 penalty attaches. The Court finds that the increased fees will be necessary to support the establishment of a full-time office of executive secretary to the Committee on Professional Conduct, that office being required for the effective enforcement of our rules of professional conduct.

On December 16 Mr. Kenneth C. Coffelt, a member of the bar of this court, filed a petition and memorandum brief asking that the above order be stayed, vacated, and set aside for the following reasons:

1. The Court does not have the authority to make and enforce the order in question.

2. The amount of the fee is larger than is needed.

3. The order is contrary to the Contract and Due Process Clauses of the Federal and State Constitutions.

4. The order should not take effect until it has been approved by a vote of a majority of the licensed attorneys, in a poll to be taken by mail under the supervision of the Court.

We find no merit in the petition. The first, third, and fourth points have to do with the Court's constitutional authority and may be discussed together.

In 1928 the people of Arkansas adopted Constitutional Amendment 28, consisting of a single sentence: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." The language of the Amendment is mandatory, affirmatively imposing upon this Court the duty of making and enforcing rules governing the practice of law and the conduct of lawyers. The duty necessarily extends to the enforcement of the rules as well as to their promulgation, for without enforcement the purpose of the Amendment would fail.

The suggestion that the annual license fee can be levied only by the General Assembly, or by this Court with the approval of the practicing attorneys, is without merit. The judiciary is a coordinate branch of the State government, of equal dignity with the legislative and executive departments. Under the Constitution this Court has general superintending control over the judicial branch of the government. Article 7, Section 4. Practicing attorneys are officers of the courts, for whose professional conduct this Court has been explicitly made responsible by Amendment 28. That responsibility could not be effectively discharged if it were dependent upon action to be taken by the General Assembly or by the attorneys whose professional conduct is to be regulated. Under familiar constitutional principles, the imposition of the duty of regulation upon the Court carries with it by necessary implication the power to take whatever measures are essential and appropriate to the performance of the duty.

The petitioner's fourth assertion, that an annual fee of $17.00 is higher than it need be, is a conclusion stated without supporting facts and apparently without investigation. This Court's Committee on Professional Conduct, formerly called the Bar Rules Committee, has enforced the Court's rules of professional conduct for the past thirty years, following the adoption of Amendment 28. As the spheres of public and private activity touched upon by the practice of law have expanded, the problems of discipline have undergone a corresponding expansion. In 1971, for example, the Committee received 67 written complaints, under oath, and 90 requests for personal interviews, among 350 inquiries of all kinds. Even though very few of the complaints were eventually found to be well founded, fairness to the public and to the bar required that each complaint be carefully investigated. Such investigations involve the interviewing of witnesses throughout the state, with attendant expense.

Last year the Committee, whose members serve without compensation, reached the conclusion that it had become necessary to employ a full-time professionally qualified executive secretary, who would be an employee of the committee. At the Court's request the Committee

submitted a proposed budget for the first year, a copy of which is attached as an appendix to this opinion. Representatives of the Committee discussed the budget in detail with the justices. The $15.00 increase in the annual license fee was considered to be a reasonable measure for adequately financing the executive secretary's office and activities. In harmony with the Court's practice during the past thirty years, the annual license fee is subject to change from time to time, to the end that income and expenses be kept in balance with one another.

The petitioner's allied motion, suggesting that the members of the court are disqualified to perform the very duties imposed upon them by Amendment 28, does not warrant discussion.

The petition is denied.

[APPENDIX]

OPERATING BUDGET* 1972

| | |
|---|---|
| Salary—Executive Secretary (General Counsel) | $15,000 |
| Salary—Secretarial | 5,000 |
| Travel—Staff(1) | 1,200 |
| Office Expense— | |
| Telephone(6) | 800 |
| Postage, Sationery, etc. | 400 |
| Rent(5) | 1,200 |
| Committee Member Expense Reimbursement(2) | 840 |
| Court Reporter—Services(3) | 1,800 |
| Fees—Attorneys for disciplinary suits and special investigations(4) | 2,000 |
| | $28,240 |

(1) Travel assumes mileage on auto, some meals and very little overnight hotel on theory that most trips will be in State.

(2) Assumes four regular and two special meetings at $20.00 average per member per meeting.

(3) Based on estimate of Court Reporter for six meetings of five hours each.

(4) Assumes three suits per year and minor part time investigation assistance.

(5) Temporary—while space next to Bar Association offices available in Donaghey Building.

(6) Estimate of Southwestern Bell Telephone Company for one line ($300 base charge plus $500 long distance).

---

*Budget does not include necessary capital expenditures for office furniture, typewriter, files, dictating equipment, et cetera. $10,000 from the Falk Foundation Grant would be available for these expenditures with a substantial amount left over for preliminary operating expenditures and/or surplus in the event of budget overrun.

In 1970 there were 2461 licensed attorneys which netted only $4,922 in license fees. This is approximately $23,500 less than the first year's budget. Subsequent years budgets would likely increase because of (a) inflation and (b) increased activities.