Bishop Henry Allen BELIN, Jr., Reverend Rickey H. Hicks,
Reverend Rufus R. Young, Reverend B.C. Altheimer, and
Reverend Michael Washington *v.* Reverend G. Edward WEST

93-230                                    864 S.W.2d 838

Supreme Court of Arkansas
Opinion delivered November 8, 1993

*Mays & Crutcher, P.A.,* by: *Richard L. Mays,* for appellants.

*DeLay Law Firm,* by: *R. Gunner DeLay,* for appellee.

DONALD L. CORBIN, Justice. Appellee, Reverend G. Edward West, filed suit against appellants, Bishop Henry Allen Belin, Jr., Reverend Rickey H. Hicks, Reverend Rufus R. Young, Reverend Michael Washington, and Reverend B.C. Altheimer in the Sebastian County Circuit Court alleging claims of promissory estoppel as to Bishop Belin, defamation as to Reverends Hicks and Young, and tortious interference with business expectancy as to all the reverends. This lawsuit began when appellee was not given a pastoral appointment at the Annual Conference of the African Methodist Episcopal Church (A.M.E. Church) in 1990.

Appellee originally filed suit against Bishop Belin on a promissory estoppel claim, alleging that Bishop Belin promised to appoint him as pastor of Bethel Church in Little Rock, Arkansas. Appellee further alleged that he undertook certain financial obligations in reliance on this promise. In his amended complaint, appellee added Reverends Hicks, Young, Washington, and Altheimer as defendants adding claims of tortious interference with business expectancy as to all four reverends, defamation as to Reverends Hicks and Young, and intentional infliction of emotional distress as to the bishop and all four reverends. Appellee alleged that when Reverends Hicks, Young, Washington, and Altheimer became aware appellee was going to be appointed as pastor to Bethel Church, they contacted Bishop Belin and persuaded him not to follow through on his promise, such action constituting an intentional and deliberate attempt to interfere with appellee's business expectancy. The claim of intentional infliction of emotional distress was dismissed at the close of appellee's case when appellee stated he did not intend to pursue it. Also at the close of appellee's case, the trial judge granted a motion for directed verdict on the defamation claim against Reverend Young.

In response to appellee's amended complaint, the reverends, but not Bishop Belin, filed a motion to dismiss for lack of venue alleging they were each residents of Pulaski County and there was no basis for jurisdiction over them in Sebastian County. The trial court denied the motion as to the four reverends, holding that the claims against them were "personal injury" claims and could be brought in the county in which the injury occurred. Appellee then filed a second amended complaint restating the same claims included in his amended complaint. Thereafter, appellants filed a motion to dismiss on several bases. One basis for the motion to dismiss was that the court lacked jurisdiction to hear the claims because they would require the court to interpret A.M.E. Church doctrine in violation of the First Amendment. Ultimately, appellee filed a third amended complaint realleging the claims contained in his amended complaint and his second amended complaint. After the trial court denied the motion to dismiss, the case was tried to a jury.

The jury returned the following verdicts in appellee's favor: $15,000.00 on the claim of defamation against Reverend Hicks;

$30,000.00 on the claim of promissory estoppel against Bishop Belin; $30,000.00 on the claim of intentional interference with business expectancy against the four reverends. The trial court entered judgment pursuant to the jury's verdicts. Appellants appeal from that judgment. We reverse and dismiss.

## VENUE

Citing Ark. Code Ann. § 16-60-116 (1987), appellants contend venue was improper in Sebastian County. In response, appellee cites Ark. Code Ann. § 16-60-112(a) (1987) and contends proper venue was in Sebastian County. Since a motion to dismiss for improper venue was advanced and ruled upon only as to the claims against Reverends Hicks, Young, Washington, and Altheimer, we address this argument only as it applies to these four appellants.

We look to the record as it appeared when the trial court considered the motion. The trial court made its ruling based upon the allegations in the amended complaint, wherein appellee alleged all five appellants were residents of Pulaski County. The trial court stated the claims advanced were "personal injury" claims and therefore determined jurisdiction was proper in any county in which injury occurred.

Appellee contends that even if the trial court erred in ruling his claims were "personal injury" claims, venue was still proper in Sebastian County because, in response to the four reverends' motion to dismiss for improper venue, he introduced evidence that Bishop Belin was a resident of Tennessee. Appellee argues that since venue would have been proper as to the claim against Bishop Belin in Sebastian County, venue was also proper as to the claims against the reverends as residents of Pulaski County. Even assuming venue was proper in Sebastian County as to Bishop Belin because he was a nonresident, we have held that a plaintiff cannot establish venue against resident defendants in a county where venue would not be proper based on the fact venue can be had in that county as to a nonresident defendant. *Tucker Enterprises, Inc.* v. *Hartje*, 278 Ark. 320, 650 S.W.2d 559 (1983). Therefore, we must consider whether venue was proper in Sebastian County as to the reverends based on the specific claims asserted against them.

■ We first address the tortious interference claims. There are four elements of a tortious interference claim: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *United Bilt Homes, Inc.* v. *Sampson,* 310 Ark. 47, 832 S.W.2d 502 (1992). This court has consistently held that some type of physical injury must exist to establish venue under section 16-60-112. *See e.g. Tilmon* v. *Perkins,* 292 Ark. 553, 731 S.W.2d 212 (1987). Thus, tortious interference with a business interest is not a personal injury claim under section 16-60-112(a).

■ In the instant case, venue is proper in the county where one of the defendants resides or is summoned. Ark. Code Ann. § 16-60-116 (1987). Since none of the four reverends resides or was summoned in Sebastian County, venue is improper in Sebastian County for the tortious interference claim. The trial court therefore erred in denying the motion to dismiss for improper venue. Accordingly, the claim for tortious interference is dismissed.

■ We next address the venue argument in regards to the defamation claim. Appellee argues venue is proper in Sebastian County pursuant to section 16-60-112. We have held a defamation suit is not one for personal injury and thus venue cannot be established pursuant to section 16-60-112. *See e.g. Tilmon,* 292 Ark. 553, 731 S.W.2d 212 (citing *Robinson* v. *Missouri Pac. Transp. Co.,* 218 Ark. 390, 236 S.W.2d 575 (1951)). In *Tilmon,* we affirmed our prior holdings that corporeal or physical injuries must exist before venue can be established under section 16-60-112 and Ark. Stat. Ann. § 27-610 (Repl. 1979). Appellee requests us to overrule this line of venue cases and we decline to do so.

■ Venue in a defamation suit is proper in a county where one of the defendants resides or is summoned. Ark. Code Ann. § 16-60-116. Thus, the trial court erred in denying the motion to dismiss for improper venue. The defamation claim against Reverend Hicks is dismissed.

## JURISDICTION

The only argument remaining on appeal is whether the trial court erred in determining it had jurisdiction over the subject matter of the promissory estoppel claim against Bishop Belin. Both sides agree that if this matter involves a religious dispute the trial court did not have jurisdiction.

Appellee cites *Presbyterian Church* v. *Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969), and says he is simply asking us to follow the principle set forth in *Hull* that it is not unconstitutional for civil courts to resolve legal disputes involving a church or minister so long as the court is not required to interpret church doctrine to render a decision. Appellee contends he is asking the civil courts to render a decision on the merits of the case without consulting A.M.E. Church doctrine or polity.

It is true that the United States Supreme Court has said that if a dispute involving a church can be resolved without addressing ecclesiastical questions, the First Amendment does not prohibit consideration by the civil courts. However, whenever a civil court must resort to the interpretation of church doctrine or polity, the Supreme Court has held that the civil court exercises its jurisdiction in violation of the First Amendment:

> [T]he First . . . Amendment[] permit[s] hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Serbian Orthodox Diocese* v. *Milivojevich*, 426 U.S. 696, 724-25 (1976).

This court followed *Milivojevich* in *Gipson* v. *Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988), and further recognized that religious freedom includes the power of religious bodies to determine for themselves, free from state interference, matters of church government as well as those of faith and doctrine. In short,

it is impermissible for the civil courts to substitute their own interpretation of the doctrine of a religious organization for the interpretation of the religious organization. *Milivojevich*, 426 U.S. at 721.

Appellee relied on the rules in the *Book of Discipline* in his complaint and at trial as establishing his reasonable reliance on Bishop Belin's alleged promise of employment. The A.M.E. Church is a hierarchical religious organization and has its own judicial structure. The *Book of Discipline* contains the law, statutes, historical statements, and guidelines for behavior for all positions in the church. The *Book of Discipline* also contains rules regarding the settlement of disputes between church members, sets out the method for having these disputes decided, and provides for appeal to the Judicial Council which is the highest judicatory body of the A.M.E. Church.

The A.M.E. Church is divided into districts and subdistricts. Each district is presided over by a bishop and each subdistrict is presided over by a presiding elder. Each church within the district has a pastor. The A.M.E. Church has a General Conference which meets every four years to give bishops their appointments. Bishop is the highest office in the church. Each bishop is assigned to a district. There are also other members of General Conference such as deans and presidents of colleges and seminaries. The laity also sends delegates to the General Conference.

There is also an Annual Conference which is held every year there is not a General Conference. At Annual Conference, ministers are assigned to pastorships, presiding elders are appointed, reports are received, and problems with members of the Annual Conference, bishops, and ministers are addressed. The twelfth district is composed of Arkansas and Oklahoma. Bishop Belin was the bishop of the twelfth district at the time the events involved in this lawsuit occurred. According to the *Book of Discipline* the bishop appoints the presiding elders for each subdistrict and, in conjunction with the presiding elders, determines the appointments of pastors at the Annual Conference.

It is impossible to decide the promissory estoppel claim in the instant case without inquiring into A.M.E. Church doctrine and polity and drawing conclusions as to what those

doctrines provide. In order to prove promissory estoppel, appellee must prove reasonable reliance on the alleged promise by Bishop Belin to appoint him to the pastorship of Bethel Church. This necessarily requires inquiry into A.M.E. Church doctrine and polity to determine whether it is reasonable to rely on the promise of an A.M.E. Church bishop that he is going to appoint one to a specific pastorship. This requires the court to determine whether church doctrine gives bishops authority to promise appointments. Such an inquiry into church doctrine and polity is impermissible under the First Amendment. Therefore, in accordance with *Gipson*, 295 Ark. 371, 749 S.W.2d 297, this claim is dismissed.

We are mindful of a similar case, *Minker* v. *Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354 (D.C. Cir. 1990), in which the D.C. Circuit Court said it would not be improper for the trial court to decide a contract claim based on the allegation that the church district superintendent made an oral promise to find appellant a more suitable congregation so long as no inquiry into ecclesiastical matters are required and only money damages are awarded. However, as we have just demonstrated, determination of the promissory estoppel claim in the instant case cannot be made without inquiry into ecclesiastical matters.

The judgment is reversed and dismissed.

GLAZE, J., concurs.