Monir Y. EL-FARRA *v.* Khaleem SAYYED,
Mostafa Mostafa, Hamid Patel, Nadeem Siddiqui, Mohammed Shaher, Ali Jarallah, Neal Al-Mayhani, Omar Robinson, Massod Tasneem, Fawzi Barakat, Ashraf Khan, Salif Siddiqui, Shagufta Siddiqui, Said Khan, Islamic Center of Little Rock, Inc., John Doe No. 1, and John Doe No. 2

05-419                                                    226 S.W.3d 792

Supreme Court of Arkansas
Opinion delivered February 2, 2006

*Laser Law Firm*, by: *Brian A. Brown*; *McHenry, McHenry & Taylor*, by: *Robert McHenry*, for appellant.

*Cross, Gunter, Witherspoon & Galchus, P.A.*, by: *Carolyn B. Witherspoon* and *Brian A. Vandiver*, for appellees.

J IM GUNTER, Justice.  In this appeal, we consider whether the circuit court had subject-matter jurisdiction to entertain the claims of appellant, Monir El-Farra, a former Islamic minister, against the Islamic Center of Little Rock and the members of its executive committee, the appellees. The circuit court granted the appellees' motion for summary judgment, dismissing the minister's complaint with prejudice for lack of subject-matter jurisdiction. We affirm.

Appellant is an Imam, which is a minister in the religion of Islam. In January of 2001, the Islamic Center of Little Rock ("ICLR") hired appellant pursuant to a written employment contract, which provided that the ICLR could terminate the contract through a unanimous vote of its Executive Committee and Board of Directors "on valid grounds according to Islamic Jurisdiction (Shari'a)" upon sixty-days notice to appellant.

In November of 2002, an in-house arbitration was conducted between the ICLR and the appellant over certain ICLR members' concerns regarding appellant's confrontational, controversial, and offensive behavior in his khutbas (sermons) and his interference in the ICLR administration. On May 15, 2003, the President of the ICLR sent a warning letter to appellant, copying the members of the Executive Committee and the Board of Directors, stating that appellant's actions have created "disunity and 'fitna' among the community," that members have commented upon the "inappropriateness and inaccuracy" of particular khutbas, that his khutbas have "inappropriately targeted some community members with whom you have had personal disagreements," and that his behavior was "un-Islamic." The letter then stated that the appellant must meet certain listed requirements to improve the situation or he would be subject to immediate termination. On May 30, 2003, the Executive Committee sent another letter to appellant, and copied the Board members. The letter cited additional grievances, stating that the appellant's misconduct "contradicts the Islamic law" in terms of relations with his supervisors, and placed him on probation. Finally, on July 17, 2003, the ICLR voted to terminate appellant, sent a letter telling him he was being terminated, effective immediately, and enclosed a check in payment of his salary for sixty days.

Appellant filed a complaint against the ICLR and members of its Executive Committee, alleging defamation, tortious interference with a contract, and breach of contract. The appellees filed a motion for summary judgment, arguing that the First Amendment to the United States Constitution prohibits the circuit court from exercising jurisdiction in this case. The circuit court agreed and granted the appellees' motion for summary judgment. Appellant filed this appeal.

We review a circuit court's interpretation of a constitutional provision *de novo. Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.,* 353 Ark. 701, 720, 120 S.W.3d 525, 537 (2003). The First

Amendment to the United States Constitution[1] provides in pertinent part as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. The United States Supreme Court, applying the First Amendment, has held that civil courts are not a constitutionally permissible forum for a review of ecclesiastical disputes. *See Serbian Eastern Orthodox Diocese v. Milovojevich*, 426 U.S. 696, 710 (1976); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449 (1969); *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727 (1871). The federal courts have repeatedly concluded that any attempt by civil courts to limit a religious institution's choice of its religious representatives would constitute an impermissible burden upon that institution's First Amendment rights. *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003) (affirming dismissal of discrimination claims); *Scharon v. St. Luke's Episcopal Presbyterian Hospitals*, 929 F.2d 360 (8th Cir. 1991) (affirming summary judgment in favor of church on age and sex-discrimination claims following priest's discharge); *Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354, 1359 (D.C. Cir. 1990) (affirming dismissal of minister's age-discrimination and breach-of-contract claims for church's denial of pastorship); *Hutchison v. Thomas*, 789 F.2d 392 (6th Cir. 1986) (affirming dismissal of complaint, including claims of breach of contract and defamation, for church's forced retirement of minister); *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164 (4th Cir. 1985) (affirming summary judgment for church on discriminatory denial-of-pastorship claim), *cert. denied* 478 U.S. 1020 (1986); *Simpson v. Wells Lamont Corp.*, 494 F.2d 490 (5th Cir. 1974).

The Eighth Circuit explained its reasons for refusing to involve itself in internal church discipline involving a priest's attempts to obtain employment in his chosen profession by stating as follows:

> In the instant case, however, Kaufmann's claims relate to his status and employment as a priest, and possibly to other matters of concern with the church and its hierarchy, and go to the heart of internal church discipline, faith, and church organization, all involved with ecclesiastical rule, custom and law. While there may be some

---

[1] The First Amendment is applicable to the states through the Fourteenth Amendment. *See Murdock v. Pennsylvania*, 319 U.S. 105, 108 (1943).

secular aspects to employment and conceivably even to the priest-hood or clergy, it is apparent that the priest or other member of the clergy occupies a particularly sensitive role in any church organization. Significant responsibility in matters of the faith and direct contact with members of the church body with respect to matters of the faith and exercise of religion characterize such positions. In spite of Kaufmann's argument, the proposed amendments to the complaint deal only with matters of religion and there is no allegation that we can construe in any other light.

*Kaufmann v. Sheehan*, 707 F.2d 355, 358 (8th Cir. 1983).

In *Scharon, supra*, the Eighth Circuit again addressed this issue, stating:

Personnel decisions by church-affiliated institutions affecting clergy are *per se* religious matters and cannot be reviewed by civil courts, for to review such decisions would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context of the particular case religious doctrine and canonical law support the decision the church authorities have made. This is precisely the kind of judicial second-guessing of decision-making by religious organizations that the Free Exercise Clause forbids.

*Id.* at 363.

Appellant argues that his breach-of-contract claim does not involve ecclesiastical matters related to Islamic doctrine, but only interpersonal matters concerning his relationship with the Executive Committee. Moreover, he claims that he is not challenging the discharge itself — in other words, he is not seeking reinstatement — but is merely seeking damages in accordance with the terms of the contract. Therefore, he argues, his claim is purely secular, does not involve the court in selection of a minister, and falls within the "neutral-principles doctrine" announced by the United States Supreme Court in *Jones v. Wolf*, 443 U.S. 595 (1979). We reject his arguments.

In *Jones*, the Court created a narrow exception to the prohibition of court involvement in ecclesiastical matters where the controversy involves a church's property rights. The Court stated that "there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Id.* at 599. Arkansas has

acknowledged this exception only with regard to real-property disputes. In *Kinder v. Webb*, 239 Ark. 1101, 1102, 396 S.W.2d 823, 824 (1965), we stated that "civil courts will not assume jurisdiction of a dispute involving church doctrine or discipline unless property rights are involved." *See also Holiman v. Dovers*, 236 Ark. 460, 366 S.W.2d 197 (1963). While appellant argues that he is contractually entitled to be paid money by ICLR, this is not a case involving a property dispute, but a contract dispute. The neutral-principles exception does not apply.

Appellant relies on *Jenkins v. Trinity Evangelical Lutheran Church*, 825 N.E.2d 1206 (Ill. App. Ct. 2005), in which the Illinois Appellate Court extended the neutral-principles exception to a minister's discharge where the minister resigned with the agreement that he would be paid a certain guaranteed benefit for his resignation. The parties were not arguing about whether the minister should or should not have been discharged. He resigned in exchange for the church's agreement to pay him a certain benefit. The only dispute before the court was the amount of that benefit. In holding that the First Amendment did not prohibit the court's exercise of jurisdiction, the court noted that the church bylaws in that case adopted the "neutral principles" doctrine, giving civil courts jurisdiction over contract disputes as long as they did not involve ecclesiastical issues. *Id.* at 1211. The court held that, because the minister's resignation was not the issue, the dispute was not intimately related to the church's right to discharge him. *Id.* at 1213. Therefore, the court determined that the case fell within the neutral-principles exception.

First, appellant's claim is distinguishable from the pastor's dispute in *Jenkins*. In *Jenkins* the court specifically noted that the minister's resignation and the reasons therefor were not in issue. *Id.* at 1212. In this case, that is exactly what is in issue. The only way appellant can recover for breach of contract in this case is if the ICLR did not terminate him "on valid grounds according to Islamic Jurisdiction (Shair'a)." Second, appellant's claims that there are no ecclesiastical issues involved and that he is not seeking reinstatement but only damages do not persuade us that the circuit court erred in finding it had no subject-matter jurisdiction. Appellant is suing for breach of contract. Regardless of the remedy he is requesting — and in this case he is seeking the traditional remedy of damages as opposed to specific performance — the court must review whether the grounds for termination were "valid grounds

according to Islamic Jurisdiction." It is our opinion that any determination of this claim would involve ecclesiastical issues.

Finally, the courts have held that the First Amendment protects the act of decision rather than the motivation behind it; therefore, whether the termination of appellant was based on secular reasons or Islamic doctrine, this court will not involve itself in ICLR's right to choose ministers without government interference. *See, e.g., Cha v. Korean Presbyterian Church of Washington*, 553 S.E.2d 511 (Va. 2001) (church's decisions about appointment and removal of minister is beyond subject-matter jurisdiction of civil courts); *EEOC v. Catholic Univ. Of America*, 83 F.3d 455 (D.C. Cir. 1996) (Free Exercise Clause exempts selection of clergy from employment-discrimination suits; question is not whether reasons are ecclesiastical in nature, but whether they are related to a pastoral-appointment determination); *Rayburn, supra; Scharon, supra*. "Personnel decisions by church-affiliated institutions affecting clergy are *per se* religious matters and cannot be reviewed by civil courts. . . . ." *Scharon*, 929 F.2d at 363; *see also Belin v. West*, 315 Ark. 61, 864 S.W.2d 838 (1993) (trial court has no jurisdiction to resolve legal disputes involving a church or minister if it involves an inquiry into church doctrine or ecclesiastical matters); *Gipson v. Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988) (we stated that we do not interfere in purely ecclesiastical matters). Based upon this well-established precedent, we hold that the circuit court correctly concluded that it lacked subject-matter jurisdiction to review appellant's breach-of-contract claim against the appellees.

Appellant next argues that the circuit court erred in dismissing his tort allegations. The tort allegations include appellant's claim that the publication of the letters of May 15 and May 30, 2003, constituted defamation, and his claim that the appellees committed tortious interference with the employment contract between ICLR and appellant. The allegations of interference rely upon the defamation claim.

Appellant claims that the letters included the following allegedly defamatory statements: (1) the May 15 letter accused appellant of "insubordination, disrespect, and lack of cooperation," of being "disruptive to the community," of delivering khutbas (sermons) which showed "maleficence and deliberate interference in the operations of the EC," and of "creating disunity and 'fitna' among the community," which appellant claims is a major breach of Islamic law; and (2) the May 30 letter

accused appellant of conduct which "contradicts the Islamic law," and of conduct which has "increasingly been unbecoming, insubordinate and disrespectful to the entire community." Appellant argues that these false accusations against him do not assert ecclesiastical disputes or conflicts in religious doctrines, but allege merely secular conflicts with the Executive Committee. We disagree.

In order to prove his claim of defamation, appellant must show that these allegedly defamatory statements were in fact false. *Northport Health Services, Inc. v. Owens*, 356 Ark. 630, 641, 158 S.W.3d 164, 171 (2004). To determine the truth or falsity of statements such as whether appellant's conduct "contradicts the Islamic law" or whether he was "creating disunity and 'fitna' among the community," the circuit court would be required to inquire into religious doctrine and governance. Moreover, these statements were made in the context of a dispute over appellant's suitability to remain as Imam. It is difficult to see how an inquiry can be made into these statements without an examination of religious doctrines, laws, procedures, and customs regarding who is and is not fit to be the Imam for ICLR, and the First Amendment prohibits the circuit court from delving into these matters.

Finally, the tortious-interference claim relies in part upon the defamation claim. Therefore, for the reasons discussed herein, we hold that the circuit court does not have subject-matter jurisdiction to review it.

Affirmed.

GLAZE and IMBER, JJ., not participating.