Mike WILSON *v.* Richard WEISS, Director DFA;
Jim Wood, Auditor; Gus Wingfield, Treasurer; City of Bigelow;
Cleburne County; City of Jacksonville; Jacksonville Museum of
Military History; Jacksonville Boys and Girls Club;
and Reed's Bridge Preservation Society

06-740                                                    245 S.W.3d 144

Supreme Court of Arkansas
Opinion delivered December 14, 2006

*Mike Wilson*, for appellant.

*Mark J. Whitmore*, for appellee Cleburne County, Arkansas.

*Mark R. Hayes* and *D. Clifford Sward*, for appellees City of Jacksonville, Arkansas, and City of Bigelow, Arkansas.

*Ben E. Rice*, for appellee Jacksonville Museum of Military History.

ROBERT L. BROWN, Justice. This is an appeal from multiple orders by the Pulaski County Circuit Court regarding multiple acts passed in the 2005 general session of the Arkansas General Assembly. The complaint brought by appellant Mike Wilson on July 17, 2005, alleged an illegal exaction in that Act 1898, Act 825, Act 932, Act 837, Act 644, and Act 1473 of that session constituted special and local legislation in violation of Amendment 14 to the Arkansas Constitution. The complaint further alleged that Act 932, Act 1473(1)(C), and Act 644 of the session were unconstitutional

under Article 5, Section 29, of the Arkansas Constitution for failing to include a distinct purpose for the appropriations. We dismiss most of this appeal without prejudice to refile due to lack of a final order and compliance with Rule 54(b) of the Arkansas Rules of Civil Procedure. With respect to Act 1898 and the City of Bigelow, we reverse and remand the order of the circuit court, as we hold that the Act constitutes special and local legislation.

Following the filing of the complaint in this matter, the circuit court, on September 20, 2005, issued a temporary restraining order against state defendants/appellees Richard Weiss, Director of the Department of Finance and Administration; Jim Wood, State Auditor; and Gus Wingfield, State Treasurer, to restrain temporarily the disbursement of the funds connected to the contested appropriations. The circuit court also directed Wilson to join three defendants as necessary parties: North Pulaski Community Complex, North Pulaski Fire Department, and Arkansas Community Foundation (Three Cheerleaders Fund). This was done by Wilson in his Second Amended Complaint filed on September 19, 2005.[1] The new defendants were never served with process and never filed responsive pleadings.

Thereafter, the parties moved for summary judgment, and the circuit court entered the following orders:

- February 15, 2006 — The circuit court entered an order granting defendant Cleburne County's motion for summary judgment and ruling that Act 932 was constitutional. Additionally, the court lifted the temporary restraining order with regard to that act.

- February 21, 2006 — The circuit court entered an order granting defendant Jacksonville Museum of Military History's motion for summary judgment and ruling that Section 1(C) of Act 1473 was constitutional. The court also set aside the temporary restraining order against paying the appropriation under this act.

- March 7, 2006 — The circuit court entered an order granting defendant City of Jacksonville's motion for summary judgment and ruling that Act 825 was constitutional. Therefore, the court dissolved the temporary restraining order with respect to the

---

[1] The direction by the circuit court was apparently done orally before the entry of the temporary restraining order.

funds appropriated under Act 825. The court also denied the City of Jacksonville's motion for summary judgment with regard to Act 837 (note that the court later ruled that Act 837 was unconstitutional).[2]

- March 30, 2006 — The circuit court entered an order granting defendant Reed's Bridge Preservation Society's motion for summary judgment and ruling that Act 644 was constitutional. The court set aside the temporary restraining order preventing disbursement of funds under this appropriation.

- May 19, 2006 — The circuit court entered an order granting defendant City of Bigelow's motion for summary judgment and ruling that Act 1898 is constitutional, which had the effect of lifting the temporary restraining order and denying Wilson's request for permanent injunctive relief.

- May 19, 2006 — The circuit court entered an order granting Wilson's motion for summary judgment with respect to Section 1(B) of Act 1473, declaring this provision (appropriating funds to the Jacksonville Boys & Girls Club) unconstitutional. The court enjoined defendants Weiss, Wood, and Wingfield from disbursing public funds under that act. The court also granted defendant Jacksonville Senior Center's motion for summary judgment and ruled that Section 1(A) of Act 1473 was constitutional.

On appeal, Wilson raises two points: (1) the circuit court erred in finding that the challenged acts did not violate Article 5, Section 29 of the Arkansas Constitution, in that no distinct purpose for the appropriations was stated in the acts; (2) the circuit court erred in finding that the General Improvement Fund transfers are not local and specialized legislation in violation of Amendment 14 to the Arkansas Constitution.

## I. Rule 54(b)

We first address a Rule 54(b) problem, which we raise on our own motion. See, e.g., Roe v. Arkansas Dep't of Correction, 367 Ark. 348, 240 S.W.3d 127 (2006) (holding that the question of

---

[2] On May 19, 2006, the circuit court entered a separate order granting Wilson's motion for summary judgment and ruling that Act 837 was unconstitutional. The court permanently enjoined defendants/appellees Weiss, Wood, and Wingfield from disbursing public funds under the authority of Act 837.

whether an order is final and appealable is a jurisdictional question that this court will raise *sua sponte*.) Rule 54(b) reads in pertinent part:

> (2) *Lack of certification.* Absent the executed certificate required by paragraph (1) of this subdivision, any judgment, order, or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the judgment, order, or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Ark. R. Civ. P. 54(b)(2); *see also* Ark. R. App. P. – Civ. 2(a)(11).

This court has repeatedly held that the failure to adjudicate all of the claims involving all of the parties at the circuit court level will result in a dismissal for failure to appeal a final order. *See, e.g., Sims v. Fletcher*, 368 Ark. 178, 243 S.W.3d 863 (2006) (holding that we are unable to address the merits of the appellants' arguments where we do not have before us a final, appealable order); *Downing v. Lawrence Hall Nursing Ctr.*, 368 Ark. 51, 243 S.W.3d 263 (2006) (ruling that we do not have jurisdiction to hear an appeal where there is not a final order as to all defendants); *Roe, supra.*

In the case at hand, the three new defendants added in Wilson's Second Amended Complaint never were dismissed from this lawsuit. Admittedly, Wilson made it clear to the circuit court that he was not pursuing constitutional arguments against these three entities. Moreover, this court is aware, based on the record, that these defendants were never served with process and never responded to the Second Amended Complaint. Thus, it could be contended that commencement of an action against them was never perfected because service of a summons for each new defendant did not take place within 120 days after filing the complaint. *See* Ark. R. Civ. P. 4(i). It is further clear that the parties in this matter do not consider the three defendants to be additional parties, as they have not included them in the style of this appeal.

Nonetheless, Rule 4(i) also states, "[i]f service of the summons is not made upon a defendant within 120 days after the filing of the complaint, the action shall be dismissed as to that defendant without prejudice upon motion or upon the court's initiative." *Id.*

In the instant case, there was no dismissal order entered by the circuit court in connection with these three defendants.

This court has been resolute in its enforcement of Rule 54(b) in order to assure that we only review final orders and do not engage in the appellate practice of some other states of entertaining piecemeal appeals. We recognize that a dismissal order in this case by the circuit court regarding these three defendants may in large part be ministerial. Yet, our rule is clear and until these three defendants are actually dismissed from the case, the action against them is not final.[3] *See, e.g., Downing, supra; Roe, supra.*

Accordingly, we dismiss without prejudice to Wilson to refile the balance of his appeal involving Cleburne County, Jacksonville Museum of Military History, City of Jacksonville, and Reed's Bridge Preservation Society upon correction of the Rule 54(b) problem. Wilson is not pursuing his appeal involving Jacksonville Senior Center. That leaves only Wilson's appeal related to the City of Bigelow for our consideration today.

## II. Act 1898 — City of Bigelow

The circuit court's order relating to Act 1898 and the City of Bigelow was entered on May 19, 2006. The court stayed its order pending appeal on June 1, 2006. Wilson's notice of appeal was filed on June 9, 2006. The circuit court's order denied Wilson's request for a declaratory judgment that Act 1898 was special and local legislation. Thus, the circuit court's order effectively lifted the temporary restraining order against disbursement of the funds under Act 1898 and denied the prayer for a permanent injunction. No final order has been entered in this case, as this court has already discussed in this opinion. Our rules, however, provide for an interlocutory appeal from an order that dissolves or refuses injunctive relief. *See* Ark. R. App. P. – Civ. 2(a)(6); *see also, AJ & K Operating Co. v. Smith,* 355 Ark. 510, 140 S.W.3d 475 (2004). The circuit court's order relating to Act 1898 and the City of Bigelow was timely appealed and falls squarely within the category of such an interlocutory appeal. We, therefore, conclude that this appeal is properly before us for review.

---

[3] We request our Civil Practice Committee to review Rule 54(b) and Rule 4(i) in light of this opinion.

The City of Bigelow points to the following specific factual findings made by the circuit court, which are not disputed in this appeal:

> (a) Bigelow is located approximately: one mile from the Arkansas River, ten miles from the City of Perryville, ten miles from the City of Conway, eight miles from Wye Mountain, fifteen miles from the city of Maumelle, and twenty miles from the cities of Little Rock and North Little Rock; *Affidavit of Lorrie Kirk*, hereinafter, "Kirk Aff.," attached to Bigelow's Motion for Summary Judgment as Exhibit A, para. 5; *Map of Arkansas Highways*, attached to Bigelow's Motion for Summary Judgment as hereto as Exhibit B, grid D-5; (b) Bigelow maintains a park, known as "Bigelow Park;" *Kirk aff.*, para. 12; (c) in visiting Bigelow Park, people must travel to and through Bigelow, including traveling on its city streets; *Id.*, para. 12; (d) the infrastructure of Bigelow, including, but not limited to, its streets, drainage ditches, has declined over the years and is in need of repair and maintenance; *Id.*, para. 9; and (e) Bigelow's budget is insufficient to meet its infrastructure, sewer and street needs. *Id.*, para.14.

The circuit court then specifically found in its order:

> Safe travel and tourism are legitimate state purposes, and appropriating funds to municipalities to maintain streets is rationally related to those purposes. The reasons for applying Act 1898 to Bigelow, as opposed to some other area, are rational. Bigelow is uniquely situated, geographically speaking, by being close to Wye Mountain and having a park which draws visitors from the area and the state as a whole. Visitors to Bigelow Park must travel in or through Bigelow; and visitors to Wye Mountain, in many instances, must do the same. Therefore, it is rational and conceivable that the General Assembly, desiring to promote tourism and safe travel, provided funds for infrastructure and street improvements directly to the city.

Wilson, on the other hand, urges that the circuit court erred in holding that Act 1898 of 2005 was constitutional. He notes that Act 1898 provides for the appropriation of $400,000 to the City of Bigelow for "infrastructure, sewer, and streets" but asserts that there is absolutely no legitimate reason for selecting the City of Bigelow for special treatment in the form of $400,000 in taxpayer

funds for these purposes.[4] He claims that while the circuit court's order addressed the benefits of infrastructure, sewer, and streets and why Bigelow has these needs, the court's order does not address why treating Bigelow specially was legitimate and rational. Further, he notes that the circuit court stated in its order that Act 1898 did not amount to special, localized treatment for Bigelow because Bigelow has a park, a football team and school, and a civic center; because it has hosted the state basketball championships; and because its infrastructure, sewer, and streets have declined as a result. According to Wilson, the circuit court's rationale could apply to many Arkansas cities, towns, townships, or communities.

Our standard of review for purposes of this appeal is clear. Both Wilson and the City of Bigelow filed motions for summary judgment, which resulted in the court's order of May 19, 2006. The facts of this case, as already stated, are not in dispute. In matters of constitutional interpretation, such as we have before us, we conduct a *de novo* review of the circuit court's interpretation. *See, e.g., El-Farra v. Sayyed*, 365 Ark. 209, 226 S.W.3d 792 (2006).

Amendment 14 to the Arkansas Constitution provides: "The General Assembly shall not pass any local or special act." Ark. Const. amend. 14. We have "differentiated that 'special' legislation arbitrarily separates some person, place, or thing, while 'local' legislation arbitrarily applies to one geographic division of the state to the exclusion of the rest of the state." *McCutchen v. Huckabee*, 328 Ark. 202, 208, 943 S.W.2d 225, 227 (1997) (citing *Fayetteville Sch. Dist. No. 1 v. Ark. State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993)).

With regard to a challenge under Amendment 14, this court has also said:

> [T]his court has repeatedly held that merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation. *Fayetteville, supra*; *City of Little Rock v. Waters*, 303 Ark. 363, 797 S.W.2d 426 (1990).

---

[4] According to Wilson, historically, the General Improvement Fund was the result of interest realized on state deposits and was used for the benefit of state colleges and universities and for capital projects. In the 2005 general session, this was changed, and an agreement was reached by legislators whereby each senator would have $750,000 available to fund local projects and each representative would also have a sum available, depending on time of service, for local projects.

Instead, we have consistently held that an act of the General Assembly that applies to only a portion of this state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. *Fayetteville, supra; Owen, supra; Board of Trustees v. City of Little Rock*, 295 Ark. 585, 750 S.W.2d 950 (1988); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Of particular interest, is *Phillips v. Giddings*, 278 Ark. 368, 646 S.W.2d 1 (1983), where we clarified that although there may be a legitimate purpose for passing the act, it is the classification, or the decision to apply that act to only one area of the state, that must be rational.

*McCutchen*, 328 Ark. at 208-09, 943 S.W.2d at 227-28.

In *McCutchen, supra,* we further said that when making a decision as to whether there is a rational reason for applying an act to only one county in this state, "this court may look outside the act and consider any fact of which judicial notice may be taken to determine if the operation and effect of the law is local, regardless of its form." 328 Ark. at 209, 943 S.W.2d at 228. We noted in that case that the purpose of Act 739 of 1995 was to provide funds for the construction of a multipurpose civic center (Alltel Arena in North Little Rock) that would increase tourism, recreation, and economic development throughout the state. We further recognized that in order to achieve those purposes, Pulaski County could well have been selected as the regional location for the center because of judicially noticed facts, such as the fact that Pulaski County is the most populous county in the state, because it is centrally located, and because it is the seat of state government. This court found that these reasons were not arbitrary or capricious. Because we acknowledged that it is not this court's role to second-guess the legislature, we concluded that the decision to construct the civic center in Pulaski County was rationally related to the intended purposes of Act 739 of 1995.

In the instant case, Act 1898 applies only to the City of Bigelow. Thus, as was the case in *McCutchen*, the relevant inquiry is whether there exists a rational and legitimate reason for applying this act to only one community in this state. Furthermore, it is Wilson's burden to prove that Act 1898 was not rationally related to a legitimate governmental purpose. *See City of Siloam Springs v. Benton County*, 350 Ark. 152, 85 S.W.3d 504 (2002). In making this determination, this court may look outside the act and consider any fact of which judicial notice may be taken. *See McCutchen, supra.* The stated purpose of Act 1898 of 2005 was "for

infrastructure, sewer and streets." The circuit court recognized that possible reasons for selecting Bigelow to receive such an appropriation might include safe travel and tourism, which are legitimate state purposes. The court also found that appropriating funds to a municipality to maintain streets is rationally related to those purposes.

Bigelow also claims that the "tiered funding mechanism" for roads and highways provides another rational basis for Act 1898. The city explains that the General Assembly funds many major statewide projects using a tiered funding system such as roadways, health care, and libraries. According to Bigelow, this system consists of (1) a major first-tier appropriation to a major first-tier entity such as the Arkansas State Highway and Transportation Department; (2) a smaller second-tier appropriation to the same entity or another charged with the same responsibilities; (3) a third-tier appropriation to the same entity or another charged with the same responsibilities; and (4) an appropriation by an individual legislator through the General Improvement Fund. Bigelow maintains that the fourth-tier appropriation may be used by individual members of the General Assembly to fill in the "funding gaps" left in their respective jurisdictions, so as to best meet the needs of their respective constituencies. This system, Bigelow contends, is a completely rational method by which the General Assembly may meet its legitimate public purpose of constructing, maintaining, and operating a transportation network in Arkansas.

We are convinced that the reasons put forth to justify the $400,000 appropriation to the City of Bigelow for "infrastructure, sewer, and streets" could be advanced by multiple cities, towns, and communities throughout the state, as Wilson maintains. We are further convinced that no reason rationally related to a legitimate state purpose has been provided this court for singling out Bigelow for special treatment. Any community located in some proximity to a park or tourist attraction could claim comparable needs. If Act 1898 is allowed to stand, the result would be that Amendment 14's prohibition against special and local legislation would be swallowed by exceptions premised on "safety and tourism." We are convinced that the people of Arkansas did not intend such an eventuality when they adopted a flat ban against special and local legislation by approving Amendment 14. In addition, we view the argument of multi-tiered road appropria-

tions as little more than a grouping of various road programs without providing a legitimate reason for affording Bigelow special and local treatment.

In this regard, one commentator on Amendment 14's history has said that prior to the overwhelming approval of Amendment 14 by the people of Arkansas in 1926, our State had employed piecemeal limitations through the legislature on local and special legislation, which, over time, "proved inadequate to slow the pace of special and local legislation." Robert M. Anderson, *Special and Local Acts in Arkansas*, 3 Ark. L. Rev. 113, 114 (1949). In fact, editorials and articles published about the time of the passage of Amendment 14 showed that "proponents of the Amendment were chiefly concerned with the rapid growth of special and local legislation and the diminishing amount of time devoted to the consideration of general laws." *Id.* at 114 n.6. Initially, the enforcement of pre–Amendment 14 limitations on the passage of special and local acts was left largely to the legislature, which led to statements like that of Chief Justice Hart of the Arkansas Supreme Court, who said, "[i]f the judgment of the Legislature must control in all cases, the amendment (Amendment 14) could serve no purpose, and the people might just as well not have initiated and adopted it." *Id.* at 115 (quoting *Simpson v. Matthews*, 184 Ark. 213, 216, 40 S.W.2d 991, 992 (1931)). Certainly, our case law supports that conclusion. *See, e.g., Weiss v. Geisbauer*, 363 Ark. 508, 215 S.W.3d 628 (2005) (no rational basis existed for giving only Mississippi River border cities preferential tax treatment); *Humphrey v. Thompson*, 222 Ark. 884, 763 S.W.2d 716 (1954) (no justification or special need existed for appropriating funds to establish a vocational-technical school in only one county).

We hold that the circuit court erred in determining that Act 1898 was constitutional. We reverse the order of the circuit court and remand for entry of an order consistent with this opinion.

Dismissed without prejudice in part; reversed and remanded in part.

HANNAH, C.J., concurs in part and dissents in part.

DICKEY, J., not participating.

JIM HANNAH, Chief Justice, concurring in part, dissenting in part. I concur in part and dissent in part. Mike Wilson

appeals from orders entered granting summary judgment in favor of Cleburne County, Jacksonville Museum of Military History, City of Jacksonville, Reed's Bridge Preservation Society, and City of Bigelow (local entities). Because the circuit court never acquired jurisdiction of the local entities, the grants of summary judgment are null and void. The circuit court never acquired jurisdiction over the local entities because the pleadings ostensibly adding them make no claim for relief against them. Wilson states clearly that he has no cause of action against these entities, and that he seeks no relief against them.[1] A pleading that includes no claim for relief against a party is not a complaint as to that party. It is void. It does not invoke the jurisdiction of the trial court as to that party.

A pleading requesting relief is necessary in a legal action or proceeding in order to confer jurisdiction over the parties so that a legally binding determination of the claim or controversy can be made. 61A Am. Jur. 2d *Pleading* § 3 (2006); *see also In re Tinn*, 84 P. 152 (Cal. 1906), *overruled on other grounds in Olivera v. Grace*, 122 P.2d 564 (Cal. 1942); *Hightower v. Roman Catholic Bishop of Sacramento*, 48 Cal. Rptr. 2d 420, 425 (Cal. Ct. App. 2006). Unless a complaint or other pleading is filed against a party, a judgment of a court is void and subject to collateral attack, even though it has jurisdiction over the subject matter of the dispute. 61A Am. Jur. 2d *Pleading* § 3. There must be a cause to be heard against a party before there is jurisdiction. *Tinn, supra.* In this case, there was no cause pled against the local entities. They were never subject to the jurisdiction of the circuit court and any action taken by them or by the court with respect to them is null and void.

Additionally, even if the local entities had been properly added to the action, they were not proper parties. Wilson's complaint alleges a violation of article 16, § 13 of the Arkansas Constitution and seeks to enjoin Richard Weiss, as Director of the Department of Finance Administration; Jim Wood, as State Auditor; and Gus Wingfield, as State Treasurer, from disbursing funds.

---

[1] In Wilson's Amended Complaint, we find the following critical language: "Plaintiff further states that he has no present cause of action against the additional defendants and seeks no relief against them." In his Second Amended Complaint, Wilson states that he is again adding parties "as directed by the Court." He reaffirms his original complaint which was directed solely at Richard Weiss, as Director of the Department of Finance & Administration, Jim Wood as State Auditor, and Gus Wingfield as State Treasurer.

The proper parties to an illegal-exaction suit are the citizen who files the complaint and the governmental entity to be enjoined. *See Worth v. City of Rogers*, 351 Ark. 183, 89 S.W.3d 875 (2002). The purpose of art. 16, § 13 is to provide a means by which taxpayers can collectively resist illegal taxation. *Martin v. Couey Chrysler Plymouth, Inc.*, 308 Ark. 325, 824 S.W.2d 832 (1992). I find no case where an illegal-exaction lawsuit was used to provide a forum for intended recipients of illegally-exacted taxes to fight for their share of the alleged illegal taxes. They have no standing.

Also, the majority lays out a history of Amendment 14 and its purposes. I agree with the majority that under Amendment 14, this court has a duty to determine whether an act of the General Assembly is unconstitutional because it is special or local. The decision in *Marbury v. Madison*, 1 Cranch 137 (1803), made clear the duty of courts to determine whether the acts of the legislature are constitutional.[2] *Wells v. Riviere*, 269 Ark. 156, 599 S.W.2d 375 (1980). Just as the General Assembly is under a duty to carry out its duty in enacting the laws, it is our duty to interpret those laws, and it is the duty of the executive branch to enforce them. Each of the three branches are of equal dignity. *In re Supreme Court License Fees*, 251 Ark. 800, 483 S.W.2d 174 (1972) (per curiam). Our form of representative government is dependent upon each coordinate branch of government complying with its constitutional obligations and its constitutional restraints.

If it were not for the lack of jurisdiction, I would agree with the result reached by the majority. To date, the only valid decision made by the circuit court on summary judgment is entry in Wilson's favor on Act 837. That decision has not been appealed. Upon remand, an issue should be who is a proper party to this illegal-exaction suit.

---

[2] The acts of the General Assembly are presumed constitutional. *Holloway v. Pine Ridge Addition Residential Prop. Owners*, 332 Ark. 450, 966 S.W.2d 241 (1998); *Hickenbottom v. McCain*, 207 Ark. 485, 181 S.W.2d 226 (1944).