ARKANSAS GAME & FISH COMMISSION *v.* PAGE, TREASURER.

4-4341

Opinion delivered May 11, 1936.

*McRae & Tompkins, Brundidge & Neelly, Vol T. Lindsey, D. G. Beauchamp* and *Miles & Amsler,* for appellants.

*Carl E. Bailey,* Attorney General, and *Thomas Fitzhugh,* for appellee.

BAKER, J. This suit was brought to test the validity of a certain part of Act 194 of the Acts of the General Assembly for the year, 1935, that part being a purported appropriation of money belonging to the Arkansas Game and Fish Commission. The pertinent part of said act involved is § 2, which provides: "During the fiscal year ending June 30, 1936, there shall be transferred from the Game Protection Fund the sum of Five Thousand Dollars ($5,000) and the State Treasurer is hereby directed to effectuate such transfer, notifying the Secretary of the State Game and Fish Commission at the time the entry is made, and the sum of eleven thousand three hundred fifty dollars ($11,350) shall be transferred from a General Revenue Special Fund which it is contemplated will

be hereafter created. For the fiscal year ending June 30, 1937, there shall be transferred from the Game Protection Fund the sum of four thousand dollars ($4,000), and from a General Revenue Special Fund, to be hereafter created, the sum of ten thousand six hundred fifty dollars ($10,650)."

By reading the caption or title of the act, which is styled "An Act to Make Appropriation for the Maintenance and Operation of the State Park Commission," and by reading § 5 of said act, it may be surmised that the moneys from the game protection fund might be expended by the State Park Commission in the acquisition or development of some park area upon approval by the Governor of the expenditure, and moreover § 6 of the act, the emergency provision, is to the effect that the Federal Government is now carrying on an extensive park development program in the State, thereby furnishing employment for a great many citizens of the State, and accelerating business to an appreciable extent, and offering the State an unusual opportunity of having its recreational sites developed without cost to the State, except providing the necessary sites and guaranteeing the proper administration of such areas when the development is completed.

From the foregoing copied and stated portions of act 194, Acts 1935, the State Park Commission makes claim to $5,000 of money to the credit of the Arkansas Game and Fish Commission for the year of 1936, and if successful in this claim will, of course, claim the additional $4,000 for 1937, provided for therein.

Dr. W. F. Smith, who is also one of the appellants, sues as a taxpayer to enjoin the Treasurer of the State from a transfer of this $5,000 from the Arkansas Game and Fish Commission's account, designated as the "Game Protection Fund," act 160 of Acts of 1927. The Arkansas Game and Fish Commission and Dr. W. F. Smith alleged that the Treasurer will, unless enjoined, make transfer of these funds from the account of the Arkansas Game and Fish Commission; that such transfer would be wrongful and illegal for several reasons. The principal reason urged is that the part of the act

making the appropriation is void by reason of its indefiniteness and uncertainty. It is also urged that a transfer of the money belonging to the Arkansas Game and Fish Commission, if appropriated to the use of the State Park Commission, would be a diversion of the funds and in violation of § 11 of article 16 of the Constitution, and further it is said that if the fund be transferred by the Treasurer to the State Park Commission's account that the State Park Commission still cannot make use of the fund unless the use thereof is first approved by the Governor of the State, and that, therefore, the appropriation is conditional and incomplete until the use or the expenditure of the said fund be approved by the Governor.

In stating this last proposition, it is further urged that since the money cannot be used except by and with consent of the Governor that the Legislative Department has, without warrant therefor, delegated to the chief executive a function or duty purely legislative.

The view we have of this controversy is such that it becomes unnecessary, we think, to discuss all these several matters or causes however meritorious they may appear.

It is not often that Legislative bodies fall into the error of enacting a bill or a statute so indefinite, vague, or uncertain as to be invalid. Where there is no rule or guide to be followed as a measure of accuracy or completeness in drafting a legislative enactment the task is ordinarily, not so difficult as it is when certain requisites must be met.

The State, however, by its organic law has made certain provisions in relation to the collection and disbursements of public revenue, and however simple it might otherwise seem, ordinarily, one who undertakes to draft an act affecting taxation or public funds derived therefrom should have some definite knowledge of the requirements of the Constitution of this State, and must follow these requirements.

Section 29 of article 5 of the Constitution of this State is as follows: ''No money shall be drawn from the treasury except in pursuance of specific appropriation

made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years.''

However apparently simple, direct and understandable the foregoing provision of our Constitution may appear to the reader, it is certain that § 2 of act 194 of the Acts of 1935, which is the controverted portion of the act under discussion, meets and complies with said § 29 only in one particular, and that is, it fixes definite or certain amounts which may be transferred from the account of the Arkansas Game and Fish Commission, $5,-000 for the year 1936; $4,000 for the year 1937.

It does not distinctly state in the bill the purpose of the transfer of this money. If it be urged that the bill is sufficiently definite and certain, when taken altogether to determine that the State Park Commission should be the beneficiary of the transfer by reading the caption or title of the bill, and by reading §§ 5 and 6, the purpose of the transfer is not stated. In fact, § 4 of the bill is to the effect that if the Commission shall determine that any item or portion thereof appropriated herein, for a specific purpose is not needed for such purpose, it may certify such fact to the State Comptroller and Governor, and the Governor may, at his discretion, cause transfer to be made from one item to another.

We find in the face of the bill such uncertainty, such vagueness that if this transfer be treated as an appropriation that some commission, either the Arkansas Game and Fish Commission, or the State Park Commission, should determine some portion of the money is not needed for a particular item it (one of the commissions) may present the problem to the State Comptroller and to the Governor, and the Governor may cause transfer to be made from one item to another, supplying the purpose unstated in the act.

Section 5 of the act is to the effect that before any moneys from the Game Protection Fund are expended in the acquisition or development of any park area the Governor shall approve the expenditure. But so far as

the act is concerned if the money were transferred from the account of the Arkansas Game and Fish Commission to the account of the State Park Commission, the State Park Commission may use the money in further acquisition and development of a park area, or for any other purpose.

This statement is not made with the idea that the State Park Commission might or should make any improper use of the fund. The whole course of conduct of the State Park Commission has been such as to refute any such conclusion. Its work has been one of growth, of development, of acquiring more material value for the State than has ever been accomplished in the history of the State by any other similar organization. Only a few years ago, it started having a sincere and honest enthusiasm to establish, build and maintain parks for the people of the State as its sole asset and without cost to the State by any special system of taxation, park values now amount to more than a million dollars. The park areas of the State are monuments to the great industry, integrity and public spirit of the commissioners.

But that is not the question we have before us. The public policy of the State is defined by its Constitution, and because of the fact that the Constitution says that the purpose of the appropriation shall be distinctly stated in the bill we cannot permit even honesty, integrity, good intentions, progressive enthusiasm or even successful operation to take the place of an essential or material part of the appropriation bill.

The State Park Commission pleads: ''If $5,000 is transferred as herein prayed, the Park Commission will use it, if permitted by the Governor, to acquire additional areas for fish and game refuges at all State parks, and to aid in completion of the Lonoke Fish Hatchery, thus helping not only the game and fish, but also the human beings in Arkansas. If it is not transferred, it will help only the game and fish.''

The foregoing statement taken from the intervention or answer of the State Park Commission may be taken as a pledge for the proper use of the money, but it also amounts to an admission or confession of a failure

on the part of the attempted appropriation to state a specific purpose or general purpose of the appropriation.

The constitutional provision applicable requires no interpretation; no form of elucidation could state the rule more clearly or forceably.

It only remains to determine if the salient provisions are directory or mandatory. *Dickinson, State Auditor, v. Johnson,* 117 Ark. 582, 176 S. W. 116; *Dickinson, State Auditor, v. Edmonson,* 120 Ark. 80, 178 S. W. 930.

Peculiarly applicable to the instant case is the announcement in *Dickinson, State Auditor, v. Clibourn,* 125 Ark. 101, 187 S. W. 909.

"All moneys must be specifically appropriated and specifically applied." *Lund v. Dickinson, State Auditor,* 126 Ark. 243, 190 S. W. 428. These provisions of the Constitution are mandatory and must be enforced.

Without going into a discussion of the other matters or reasons, we think this transfer must fail because it is not in compliance with the requirements of that provision of the Constitution above quoted.

The decree of the chancery court is, therefore, reversed, the intervention dismissed, and the purported appropriation held invalid.