Mike WILSON *v.* Richard WEISS, Director DFA;
Jim Wood, Auditor; Gus Wingfield, Treasurer; City of Bigelow;
Cleburne County; City of Jacksonville; Jacksonville Museum of
Military History; Jacksonville Boys and Girls Club;
and Reed's Bridge Preservation Society

07-204 258 S.W.3d 351

Supreme Court of Arkansas
Opinion delivered June 7, 2007

[Rehearing denied September 6, 2007.]

*Mike Wilson*, pro se appellant.

*Mark J. Whitmore*, for appellee Cleburne County.

*Mark R. Hayes* and *D. Clifford Sward*, for appellees Jacksonville, Arkansas, and Bigelow, Arkansas.

*Dustin McDaniel*, Att'y Gen., by: *Asheton M. Carter*, Ass't Att'y Gen., for appellees Richard Weiss, Jim Wood, and Gus Wingfield.

*Ben E. Rice*, for appellees Reed's Bridge Preservation Society, Inc., and Jacksonville Museum of Military History.

R OBERT L. BROWN, Justice. This is the second appeal relating to the constitutionality of the legislative acts at issue. In *Wilson v. Weiss*, 368 Ark. 300, 245 S.W.3d 144 (2006) (*Wilson I*), this court dismissed most of the appeal due to the lack of a final order and compliance with Rule 54(b) of the Arkansas Rules of Civil Procedure. However, with respect to Act 1898 of 2005 relating to the City of Bigelow, we reversed and remanded the circuit court's order on the basis that the act constituted special and local legislation in violation of Amendment 14 to the Arkansas Constitution.

The facts leading up to *Wilson I* and now this second appeal are set out in our opinion in *Wilson I*. Suffice it to say, following this court's dismissal of most of the appeal in *Wilson I*, the circuit court entered an order and final judgment on February 15, 2007, in which it dismissed North Pulaski Community Complex, North Pulaski Fire Department, Arkansas Community Foundation (Three Cheerleaders Fund), and the Jacksonville Senior Citizen Center on the basis that appellant Mike Wilson "has never made and has withdrawn all claims for relief against these parties." The circuit court added that judgment as to all remaining parties shall be final pursuant to prior orders of the court entered on February

15, 2006; February 21, 2006; March 7, 2006; March 30, 2006; and May 19, 2006, as well as all other prior orders of the court.

The original complaint filed in this matter by Appellant Wilson alleged an illegal exaction premised on the fact that certain acts of the General Assembly violated Article 5, Section 29, of the Arkansas Constitution because they did not include a "distinct purpose" or, alternatively, constituted special and local legislation in violation of Amendment 14 of the Arkansas Constitution. The circuit court first entered a temporary restraining order against disbursement of the appropriated funds but later entered the orders from which Wilson now appeals:

- February 15, 2006 — An order granting defendant Cleburne County's motion for summary judgment and ruling that Act 932 of 2005 was constitutional.

- February 21, 2006 — An order granting defendant Jacksonville Museum of Military History's motion for summary judgment and ruling that Section 1(C) of Act 1473 of 2005 was constitutional.

- March 7, 2006 — An order granting defendant City of Jacksonville's motion for summary judgment and ruling that Act 825 of 2005 was constitutional. The court also denied the City of Jacksonville's motion for summary judgment with regard to Act 837 (note that the court later ruled that Act 837 was unconstitutional on May 19, 2006).

- March 30, 2006 — An order granting defendant Reed's Bridge Preservation Society's motion for summary judgment and ruling that Act 644 of 2005 was constitutional.

- May 19, 2006 — An order granting Wilson's motion for summary judgment and ruling that Act 837 of 2005 was unconstitutional.

- May 19, 2006 — An order granting Wilson's motion for summary judgment with respect to Section 1(B) of Act 1473, declaring said provision (appropriating funds to the Jacksonville Boys & Girls Club) unconstitutional. The court also granted defendant Jacksonville Senior Center's motion for summary judgment and ruled that Section 1(A) of Act 1473 was constitutional.

Following these orders, appellant Wilson filed a notice of appeal and an appeal bond, and he obtained a stay of the circuit court's orders. After the circuit court's order and final judgment of February 15, 2007, Wilson filed a second notice of appeal and the State appellees filed a notice of cross-appeal.[1]

## I. Motion to Dismiss

We first consider the motion to dismiss filed by separate appellee Cleburne County, which relates to a $50,000 appropriation to the Cleburne County Library under Act 932 of 2005.

According to Cleburne County, because that appropriation under Act 932 of 2005 was repealed by Act 1290 of 2007, Wilson's appeal challenging the Act 932 appropriation is now moot. Further, Cleburne County claims that all the appropriations subject to this appeal will cease to have any force and effect after June 30, 2007, due to Article 5, Section 29, of the Arkansas Constitution, which provides that appropriations shall not last for a longer period than two years. In its motion, Cleburne County requests that this court dismiss the appeal challenging the appropriation under Act 932 of 2005 on grounds of mootness.

Act 932 of 2005 appropriated $50,000 "[f]or state assistance to the Cleburne County Library[.]" That Act went into effect on July 1, 2005. Act 1290 of 2007 specifically reappropriates the balance of any funds remaining in the 2005 Cleburne County Library appropriation and provides that as of July 1, 2007, any balance will go to state-assistance grants to benefit state libraries.

We disagree with Cleburne County's analysis because Act 1290 of 2007 does not go into effect until July 1, 2007, and, thus, Act 932 of 2005 is not rendered ineffective until that same date. The result is that a decision from this court regarding the constitutionality of Act 932 of 2005 handed down prior to July 1, 2007, would not be moot. Indeed, were this court to affirm the decision of the circuit court relative to the Cleburne County Library appropriation prior to July 1, 2007, that money would be available to the library irrespective of Act 1290 of 2007. We, accordingly, deny the motion to dismiss.

---

[1] The State appellees include Richard Weiss, Director of the Department of Finance and Administration ("DFA"); Jim Wood, Auditor; and Gus Wingfield, Treasurer. The State appellees will hereinafter be referred to collectively as the "State."

## II. Distinct Purpose

We turn then to Wilson's argument that the circuit court erred by finding that the challenged acts did not violate the "distinct purpose" mandatory provision of Article 5, Section 29, of the Arkansas Constitution. Questions of statutory and constitutional construction are reviewed by this court de novo. *See Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). We first recognize, however, the stringent burden of proof Wilson is required to meet under this court's standard of review for attacking the constitutionality of legislative acts. *See Whorton v. Dixon*, 363 Ark. 330, 214 S.W.3d 225 (2005). For example, this court presumes that legislation is constitutional and that it is rationally related to achieving a legitimate governmental objective. *See id.*; *see also Arkansas Health Servs. Comm'n v. Reg'l Care Facilities, Inc.*, 351 Ark. 331, 93 S.W.3d 672 (2002). Thus, before an act will be deemed unconstitutional by this court, the incompatibility between it and the constitution must be clear. *See Whorton, supra.* Any doubt regarding the constitutionality of a statute must be resolved in favor of its constitutionality. *See id.*

Wilson challenges the circuit court's orders regarding Act 932 (Cleburne County Library), Act 1473(1)(C) (Jacksonville Museum of Military History), and Act 644 (Reed's Bridge Preservation Society), all of 2005, under Article 5, Section 29, of the Arkansas Constitution, which deals with limitations on appropriations. That constitutional provision reads:

> No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, *the purpose of which shall be distinctly stated in the bill,* and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years.

Ark. Const. art. 5, § 29 (emphasis added).

Wilson specifically challenges the stated purpose in each act for each appropriation. Act 932 appropriates from the General Improvement Fund $50,000 "[f]or *state assistance* to the Cleburne County Library[.]" (Emphasis added.) Act 1473(1)(C) appropriates $20,000 "[f]or *state aid* to the Jacksonville Museum of Military History[.]" (Emphasis added.) Act 644 appropriates $10,000 "[f]or *state assistance* to the Reed's Bridge Preservation Society, Inc." (Emphasis added.) According to Wilson, these acts provide no distinct purpose, as they are merely transfers of money to the designated entity from the State Treasury.

Wilson cites this court to *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997), for the proposition that pledges to use the funds properly outside of the legislative acts are admissions that no distinct purpose exists within the acts themselves and such pledges or promises do not supplant what is constitutionally mandated that the General Assembly must provide.[2] In *McCutchen, supra,* this court compared two prior cases from this court dealing with similar challenges:

> In *Arkansas Game & Fish Comm'n v. Page*, 192 Ark. 732, 94 S.W.2d 107 (1936), this court reviewed Act 194 of 1935 which appropriated funds from the Arkansas Game and Fish Commission to the State Park Commission for the development of state parks. The lower court held that Act 194 was unconstitutional because it only stated the reason why the act was created instead of explaining *how* the funds would be used to develop parks within this State. *Id.* (Emphasis added.)

> On appeal, the Park Commission explained that the funds would be used to acquire additional land for fish and game refuges at all state parks, and to aid in the completion of the Lonoke Fish Hatchery. *Id.* This court found that the Commission's explanation was:

>> a pledge for the proper use of the money, but it also amounts to an admission or confession of a failure on the part of the attempted appropriation to state a specific purpose or general purpose of the appropriation.

> *Id.* In other words, this court held that such an explanation needed to be contained in the act itself, and the failure to do so caused Act 194 to violate Article 5, Section 29, of the Arkansas Constitution.

> In contrast, in *Hooker v. Parkin*, 235 Ark. 218, 357 S.W.2d 534 (1962), this court upheld an act which appropriated roughly 83 million dollars to the Highway Commission for "maintenance, construction, repair . . . of all roads . . . in the State Highway

---

[2] Wilson points directly to DFA Emergency Rule 2005-3 concerning proper accountability for General Improvement Fund disbursements as additional proof that no distinct purpose was included in the challenged acts. The State argues that this rule was to assure GIF funds were not spent for an improper purpose. We do not view Rule 2005-3 as probative either way on this constitutional issue.

System." Thus, from *Hooker* and *Page*, it appears that Article 5, Section 29 requires appropriation acts to declare "how" the appropriated funds will be used instead of merely explaining "why" the funds were appropriated.

*McCutchen*, 328 Ark. at 210–11, 943 S.W.2d at 228–29.

Applying this reasoning to the case at bar, we look to the stated purpose found in each act. As previously noted, that stated purpose in each act is either to provide "state assistance" or "state aid." We agree with Wilson that these stated purposes do not comply with the requirement of Article 5, Section 29, and this court's precedent. Our reason is simple — the mere statement that the challenged acts will be used for "state assistance" or "state aid" does not explain "how" the funds will be used.

The remaining arguments of the various appellees have no merit. Cleburne County's argument that "state aid" or "state assistance" has been considered a lawful and distinct state purpose for more than twenty-five years amounts to little more than an individual opinion of that county that this court should conclude that such stated purposes are constitutional because that language has been used in appropriation bills in the past. This argument, though, is not founded on case law or convincing argument, and we therefore reject it. *See, e.g., Williams v. Brushy Island Public Water Authority*, 368 Ark. 219, 243 S.W.3d 903 (2006) (refusing to consider an argument that is not supported by authority or by convincing argument).

Reed's Bridge points to the emergency clause of Act 644 of 2005, which states that the effectiveness of this act on July 1, 2005 is "essential to the *operation* of the agency for which the appropriations in this act are provided." (Emphasis added.)[3] In doing so, Reed's Bridge compares the term "operation" as used in the emergency clause with the phrase "maintenance and operation," which was held to be constitutional as a stated "distinct purpose" under Article 5, Section 29, in *Wells v. Heath*, 274 Ark. 45, 622 S.W.2d 163 (1981). The question we have here, though, is whether the emergency clause is the proper place for the General Assembly to insert the stated purpose of a bill. For example, Act

---

[3] Acts 932 and 1473 of 2005 contain the same language in their respective emergency clauses.

644 states that money is payable from the General Improvement Fund "[f]or state assistance to the Reed's Bridge Preservation Society, Inc.," in the amount of $10,000. (Emphasis added.) Hence, the act's stated purpose is "for" state assistance. Even were this court to look to an act's emergency clause for its distinct purpose, boilerplate language in an emergency clause that says that the appropriation is "essential to the operation of the agency" is too broad and vague to meet the test of distinctly explaining "how" the money is to be spent.

▪ As a final point, we agree with Wilson that the circuit court erred by substituting its language in its orders for the language of the purpose of Act 1473(1)(C) (Jacksonville Military Museum) and Act 644 (Reed's Bridge). Wilson explains that the circuit court held, for example, that Act 1473(1)(C) was constitutional under Article 5, Section 29, because it was for the distinct purpose of "state aid," "improvements," and "operations" to the Jacksonville Museum of Military History. The circuit court, however, was not permitted to go outside the language of the bill to provide a purpose for the appropriation. *See Arkansas Game and Fish Commission v. Page*, 192 Ark. 732, 736, 94 S.W.2d 107, 109 (1936) (holding that "[t]he public policy of the state is defined by its Constitution, and because of the fact that the Constitution says that the purpose of the appropriation shall be distinctly stated in the bill, we cannot permit even honesty, integrity, good intentions, progressive enthusiasm, or even successful operation to take the place of an essential or material part of the appropriation bill.").

We reverse the orders of the circuit court relating to Act 932, Act 1473(1)(C), and Act 644 of 2005, because the acts are unconstitutional in that they fail to state a distinct purpose as required by Article 5, Section 29, of the Arkansas Constitution.

### III. Special or Local Legislation

Wilson next contends that the circuit court erred by finding that Acts 825, 932, 644, and 1473(1)(C) did not violate Amendment 14 of the Arkansas Constitution. He first explains that the General Improvement Fund had traditionally been used in the past to make temporary loans and to fund education, and he cites us to Act 750 of 1973 for his explanation. As this court explained in *Wilson I*, the purpose of the fund was later amended and was determined to consist of special revenues and other funds made

available by the General Assembly. In 2005, Wilson states that by agreement, the members of the General Assembly determined to allocate specific amounts of money to each member of the senate and of the house, who, in turn, designated that money for specific local projects within their local districts. Each member would then sponsor bills designating his or her allocated portion to various recipients, and the bills would be adopted without dissent.

As a general matter, Wilson argues that the circuit court simply applied the wrong standard for analyzing violations of Amendment 14. He claims that the court's orders and the appellees' evidence merely addressed the rational-purpose element of the test for constitutionality and not whether the funding of the project at issue when compared to other similar projects throughout the state was also rational. He contends that the General Assembly arbitrarily separated out the recipients of the challenged appropriations and that no reasons exist for providing special treatment to these agencies or entities to the exclusion of the many other comparable entities or agencies with similar needs around the state. While Wilson agrees that some of the purposes such as libraries and historic museums might be laudable, he maintains that singling out local agencies for special treatment is not.

For example, he explains that Act 825 of 2005 appropriated $300,000 to the City of Jacksonville, Arkansas "for costs associated with the construction, renovation, and equipping of a library," and Act 932 of 2005 appropriated $50,000 "[f]or state assistance to the Cleburne County Library." While libraries may be a general benefit to society, he maintains that there was no legitimate reason to single out Jacksonville or Cleburne County for favored treatment. On this point, Wilson notes that many other libraries within the state, cities, and counties are in need of funds and did not receive them.

Next, Act 644 of 2005 appropriated $10,000 "[f]or state assistance to the Reed's Bridge Preservation Society, Inc.[,]"[4] and Act 1473(1)(C) of 2005 appropriated $20,000 "[f]or state aid to the Jacksonville Museum of Military History[.]" Unlike the case of the Alltel Arena in *McCutchen, supra*, where enhancement of tourism, recreation, and economic development throughout the entire state was the stated purpose, Wilson asserts that Acts 644 and

[4] Wilson states that the Reed's Bridge Society, Inc. is a private corporation dedicated to preserving a Battlepark in Jacksonville.

1473(1)(C) have no such stated purpose. Rather, the acts state that they are for state assistance to a specific place, but nothing was submitted, relied upon, or even available by judicial notice that would explain why these entities or agencies should receive special privileges.

The Fourteenth Amendment to the Arkansas Constitution provides: "The General Assembly shall not pass any local or special act." Ark. Const. amend. 14. As previously stated in *Wilson I*, this court found that Act 1898 of 2005 violated Amendment 14. We observed in *Wilson I* that this court has " 'differentiated that 'special' legislation arbitrarily separates some person, place, or thing while 'local' legislation arbitrarily applies to one geographic division of the state to the exclusion of the rest of the state.' " *Wilson I*, 368 Ark. at 307, 245 S.W.3d at 150 (quoting *McCutchen*, 328 Ark. at 208, 943 S.W.2d at 227).

Regarding this court's review of a challenge under Amendment 14, this court said:

> [T]his court has repeatedly held that merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation. *Fayetteville, supra*; *City of Little Rock v. Waters*, 303 Ark. 363, 797 S.W.2d 426 (1990).
>
> Instead, we have consistently held that an act of the General Assembly that applies to only a portion of this state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. *Fayetteville, supra*; *Owen, supra*; *Board of Trustees v. City of Little Rock*, 295 Ark. 585, 750 S.W.2d 950 (1988); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Of particular interest, is *Phillips v. Giddings*, 278 Ark. 368, 646 S.W.2d 1 (1983), where we clarified that although there may be a legitimate purpose for passing the act, it is the classification, or the decision to apply that act to only one area of the state, that must be rational.

*Wilson I*, 368 Ark. at 307-08, 245 S.W.3d at 150 (quoting *McCutchen*, 328 Ark. at 208-09, 943 S.W.2d at 227-28). Further, this court has said that when deciding whether there is a legitimate reason for applying an act to only one county in the state, " 'this court may look outside the act and consider any fact of which judicial notice may be taken to determine if the operation and effect of the law is local, regardless of its form.' " *Id.* at 308, 245 S.W.3d at 150 (quoting *McCutchen*, 328 Ark. at 209, 943 S.W.2d at 228).

In *Wilson I*, the challenged act — Act 1898 of 2005 — read that the appropriation of $400,000 was "for infrastructure, sewer, and streets" for the City of Bigelow. *Wilson I*, 368 Ark. at 308-09, 245 S.W.3d at 151. This court noted, nevertheless, that where the act applied only to one town, the relevant inquiry was whether there existed a rational and legitimate reason for applying that act to only one community in this state. Further, it was Wilson's burden to prove that Act 1898 was not rationally related to a legitimate governmental purpose.

In the case at bar, the reasons provided by the appellees and by the circuit court to support the challenged legislation are very similar to the reasons provided to support Act 1898 of 2005 in *Wilson I*. As to Act 825 of 2005, the City of Jacksonville relies on the circuit court's reasoning in its order that "[i]t is rational and conceivable that the appropriation, under Act 825 of 2005, and funding, under Act 2315 of 2005, of general improvement funds was for state purposes, i.e., providing for the needs of Arkansans, to assure library services for Arkansans and to provide for the education of the citizenry." Included in the circuit court's discussion of the importance of libraries to Arkansans, the court said that "[i]t is the express public policy of the State of Arkansas to assure library services for Arkansans, and the need for library services transcends jurisdictional boundaries."

Along those same lines, the City of Jacksonville concludes that there is at least one rational basis for the General Assembly to provide funding for libraries, whether in Jacksonville, or elsewhere in the state. That rational basis is that the education of the people of Arkansas is essential to good government, as well as instrumental to improving job opportunities for all Arkansans. The City of Jacksonville further claims that nothing could be more rationally related to the State's interest in good government and its interest in improving the lifestyles of its citizenry than a good library system.

The City of Jacksonville also proclaims that there is a rational basis for appropriating the funds to Jacksonville, as opposed to other areas of the state. That is because anyone who uses the library in Jacksonville, including students at Jacksonville schools, will carry the benefits of the appropriations with them wherever they go. Because Jacksonville is home to a United States Air Force Base, it is further conceivable, the City maintains, that the General Assembly believed that additional spending in the Jacksonville area would make Jacksonville a more desirable post for Air Force personnel, meaning that more people might move to Jacksonville,

which would ultimately benefit the state because more money would be spent in the Jacksonville area.

In support of Act 932, the circuit court found in its February 15, 2006 order that "[i]t is rational and conceivable that the appropriation of state funds under Act 932 of 2005 and funding under Act 2315 of 2005 for public libraries in Arkansas, including the Cleburne County Library, was for state purposes, statewide, such as: providing for the needs of Arkansans; to assure library services for Arkansans, regardless of their residency; and to provide for the education of the citizenry, regardless of jurisdictional lines." In addition to the circuit court's reasoning, the Cleburne County Library claims that this appropriation is not arbitrary but that it is in alignment with the state policies of effectively and efficiently providing library services to Arkansans through existing public libraries.

Regarding Act 644, the circuit court, in its March 30, 2006 order, ruled that "[t]here is a legitimate reason for the existence of a Civil War battlefield at Reed's Bridge in Jacksonville, Arkansas, to promote tourism and to educate the public on the history of the State." The court also found that the location of Jacksonville for the battlefield site was supported by an additional rational basis — "[t]he battlefield site is centrally located in the State adjacent to the interstate freeway system and is in a good position to augment the tourism industry in Central Arkansas." Reed's Bridge added that preservation of our history in an area prone to urban development, as well as tourism, are legitimate and worthwhile objectives by the state government.

Finally, the circuit court found, in its February 21, 2006 order, that Act 1473(1)(C) was in compliance with Amendment 14 in connection with the Jacksonville Museum of Military History for many of the same reasons. The Jacksonville Museum of Military History added that visitor records to date at the museum indicate that a majority of museum visitors are from outside Jacksonville, including visitors from about forty states.

 While it could be said of both libraries, Reed's Bridge, and the Jacksonville Museum that they are all worthwhile entities, that, again, is not the only criterion to be explored under Amendment 14. As previously stated, the relevant inquiry is whether there existed a rational and legitimate reason for applying the challenged acts to only one community in this state as opposed to others with comparable needs. Neither the circuit court nor the appellees have provided a rational and legitimate reason for funding libraries in Jacksonville and Cleburne County as opposed to

other libraries throughout the state. Accordingly, we reverse the circuit court's rulings with respect to Acts 825 and 932.

With respect to Reed's Bridge and the Jacksonville Museum, this court said in *Wilson I*, "[a]ny community located in some proximity to a park or tourist attraction could claim comparable needs" to those claimed by the City of Bigelow. *Wilson I*, 368 Ark. at 309, 245 S.W.3d at 151. As was the case in *Wilson I*, allowing these acts to stand would mean that "Amendment 14's prohibition against special and local legislation would be swallowed by exceptions premised on 'safety and tourism.' " *Id.*, 245 S.W.3d at 152. There are many other museums and historical sites in the state that could have offered similar arguments for state support.[5]

█ There is no legitimate reason that these particular entities should be treated differently from other equally worthy military and historic attractions in Arkansas. We reverse the circuit court's orders regarding Acts 644 and 1473(1)(C) and hold that those acts violate the Fourteenth Amendment to the Arkansas Constitution.

### IV. Cross-Appeal

The State filed a cross-appeal in this case challenging rulings by the circuit court that two acts in 2005 were unconstitutional under Amendment 14: Acts 837 and 1473(1)(B). Act 837 of 2005 appropriated $20,000 "[f]or state assistance to the City of Jacksonville, Arkansas[.]" Act 1473(1)(B) of 2005 appropriated $10,000 "[f]or state aid to the Jacksonville Boys and Girls Club[.]"

In one of its May 19, 2006 orders, the circuit court relied on this court's holding in *McCutchen, supra,* to rule that Act 837 of

---

[5] This court said in *Wilson I* and in *McCutchen* that " 'this court may look outside the act and consider any fact of which judicial notice may be taken to determine if the operation of the law is local, regardless of its form.' " *Wilson I*, 368 Ark. at 308, 245 S.W.3d at 150 (quoting *McCutchen*, 328 Ark. at 209, 943 S.W.2d at 228). In considering whether the legislation providing appropriations to Reed's Bridge and the Jacksonville Museum is special and local legislation, we take judicial notice of the fact that there are multiple sites in Arkansas with rich military history. For example, Pea Ridge is the home to a National Military Park, Prairie Grove is home to a Battlefield Historic State Park, Gillett is the home to the Arkansas Post National Memorial, Helena is home to the Delta Cultural Center Museum, and Washington is home to the Historic Washington State Park. Moreover, there are multiple other museums and historical landmarks located throughout Arkansas.

2005 constituted local or special legislation because the reason for limiting the act to one city was not rationally related to the purposes of the act. In a separate May 19, 2006 order, the circuit court ruled that Act 1473(1)(B) of 2005 was special or local legislation because it did not provide a rational basis for funding one Boys and Girls Club in Jacksonville as opposed to all other Boys and Girls Clubs in the state.

Based on our analysis in *Wilson I* and our analysis in this opinion regarding Amendment 14 to the Arkansas Constitution, we affirm the circuit court's rulings with respect to Acts 837 and 1473(1)(B). Both acts run afoul of Amendment 14 and the prohibition against local or special acts.

Reversed and remanded on direct appeal.

Affirmed on cross-appeal.

Motion to dismiss denied.