SLIP OPINION

Cite as 2017 Ark. 270

# SUPREME COURT OF ARKANSAS

No. CV–17–90

| | |
|---|---|
| MIKE WILSON<br>APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>LARRY WALTHER, DIRECTOR OF THE ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; ANDREA LEA, STATE AUDITOR; DENNIS MILLIGAN, STATE TREASURER; AND CENTRAL ARKANSAS PLANNING AND DEVELOPMENT DISTRICT<br>APPELLEES/CROSS-APPELLANTS | **Opinion Delivered:** October 5, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60CV-16-862]<br><br>HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>**REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.** |

**ROBIN F. WYNNE, Associate Justice**

Appellant Mike Wilson filed this illegal-exaction suit in the Pulaski County Circuit Court alleging that certain acts of 2015, which appropriated funds from the Arkansas General Improvement Fund (GIF) to eight planning and development districts, are unconstitutional. The circuit court granted summary judgment in favor of the defendants. Wilson now appeals, and the defendants have cross-appealed the circuit court's rulings in Wilson's favor on standing and mootness. For the reasons set out below, we reverse and remand on direct appeal, and we affirm on cross-appeal.

On February 12, 2016, Wilson, a resident and taxpayer of Jacksonville, Pulaski County, filed an illegal-exaction complaint under article 16, § 13 of the Arkansas Constitution. Named as defendants were Larry Walther, Director of the Arkansas

SLIP OPINION

Department of Finance and Administration; Andrea Lea, State Auditor; Dennis Milligan, State Treasurer; and Central Arkansas Planning and Development District, Inc. (CAPDD).[1]

Wilson alleged that Act 514,[2] Act 551,[3] Act 612,[4] Act 619,[5] Act 622,[6] Act 654,[7] Act 786,[8] and Act 818[9] of 2015 violate amendment fourteen's prohibition on special or local legislation and article 5, § 29's requirement that an appropriation's purpose be "distinctly stated."  The challenged acts appropriate funds from the GIF for grants to eight multi-county planning and development districts that collectively encompass the entire state.  Each act contains the following language:

> SECTION 1.  APPROPRIATION — GENERAL IMPROVEMENT PLANNING AND DEVELOPMENT GRANTS.  There is hereby appropriated, to the Department of Finance and Administration — Disbursing Officer, to be payable from the General Improvement Fund or its successor fund or fund accounts, for grants to planning and development districts, the following[.]

For each of the eight planning and development districts throughout the state, appropriations "in a sum not to exceed $1,000,000" were listed in Section 1 of each act, except that the sum of $8,000,000 was listed in Act 818, bringing the total amount appropriated to each district to $15 million.

---

[1] CAPDD is an Arkansas non-profit corporation.  The challenged acts appropriate funds to the "Central Arkansas Economic Development District, Inc.," an entity that apparently no longer exists.

[2] Act of March 16, 2015, No. 514, 2015 Ark. Acts 2170.

[3] Act of March 18, 2015, No. 551, 2015 Ark. Acts 2261.

[4] Act of March 24, 2015, No. 612, 2015 Ark. Acts 2494.

[5] Act of March 24, 2015, No. 619, 2015 Ark. Acts 2513.

[6] Act of March 24, 2015, No. 622, 2015 Ark. Acts 2521.The complaint incorrectly lists Act 626 rather than Act 622.

[7] Act of March 24, 2015, No. 654, 2015 Ark. Acts 2601.

[8] Act of March 29, 2015, No. 786, 2015 Ark. Acts 3034.

[9] Act of March 29, 2015, No. 818, 2015 Ark. Acts 3110.

Wilson alleged that on September 13, 2015, the State defendants had disbursed to CAPDD the sum of $2,987,500 pursuant to Act 1146 of 2015[10] and that of that sum CAPDD had made grants in the amount of $440,000 as of the date of the complaint. According to Wilson, in the 2015 General Assembly, each member of the Senate was allocated $285,000 and each member of the House was allocated $70,000 for expenditure from the GIF; this money is awarded to grant applicants by the CAPDD board of directors only with the express approval of individual legislators. Wilson further alleged that "[i]n purpose and effect, the Defendant Central Arkansas Planning and Development District, Inc. simply acts as a money-laundering machine for individual legislators for the sole purpose of evading the force of the constitutional prohibitions and decisions of the Supreme Court."

Wilson sought temporary and permanent injunctions preventing the defendants from making or approving disbursements from the GIF under the acts; declaratory judgment that the acts are unconstitutional, void, and of no effect; an order directing CAPDD to refund $2,987,500 plus interest to the state treasury; and attorney's fees and costs. In an amended complaint, Wilson added an allegation that the defendants had violated Arkansas Code Annotated section 14-166-205 (Repl. 1998), which sets out conditions with which planning and development districts must comply to receive state funds.

After the circuit court denied his motion for temporary restraining order or preliminary injunction, Wilson filed a motion for summary judgment; the State defendants filed a motion for summary judgment that included arguments that Wilson lacked standing

---

[10] Act 1146 of 2015 established the 90th Session Projects Account within the General Improvement Fund and provided financing from that account for "the various projects and purposes enumerated," including financing for the planning and development districts.

and the complaint should be dismissed for mootness. CAPDD filed a motion for summary judgment in which it adopted and incorporated the State defendants' summary-judgment motion and brief and argued that there was no private right of action against a private non-profit corporation for illegal exaction. After responses and replies were filed, the circuit court entered an order finding that Wilson had standing and that his request for declaratory and injunctive relief was not moot, and granting summary judgment in favor of the defendants on the merits. This appeal and cross-appeal followed.

At the outset, we note that appellant Mike Wilson previously obtained relief in an illegal-exaction lawsuit challenging the constitutionality of various direct appropriations by the General Assembly. In *Wilson v. Weiss*, 368 Ark. 300, 245 S.W.3d 144 (2006) (*Wilson I*), this court held that a $400,000 appropriation to the City of Bigelow for "infrastructure, sewer, and streets" violated amendment fourteen's prohibition against special or local legislation. After a final order was obtained for the remaining acts challenged, in *Wilson v. Weiss*, 370 Ark. 205, 258 S.W.3d 351 (2007) (*Wilson II*), this court held that the following appropriations were unconstitutional under article 5, § 29 (requiring that a distinct purpose be stated in an appropriations bill) and amendment fourteen (prohibiting special or local legislation): $50,000 for "state assistance" to the Cleburne County Library; $20,000 for "state aid" to the Jacksonville Museum of Military History; and $10,000 for "state assistance" to the Reed's Bridge Preservation Society, Inc. In addition, an appropriation of $300,000 to the City of Jacksonville, Arkansas, "for costs associated with the construction, renovation, and equipping of a library," was held to violate amendment fourteen. Wilson contends that

the present system was devised to allow legislators to continue to direct GIF money locally following this court's rulings in *Wilson I* and *Wilson II*.

## I. *Cross-Appeal*[11]

### A. Standing

On cross-appeal, the State argues that this court should affirm summary judgment to the cross-appellants because Wilson lacked standing to bring an illegal-exaction suit. Article 16, § 13 of the Arkansas Constitution provides: "Any citizen of the county, city, or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *Brewer v. Carter*, 365 Ark. 531, 534, 231 S.W.3d 707, 709 (2006). In a "public funds" illegal-exaction case such as the one before us, the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. *See Bowerman v. Takeda Pharm. U.S.A.*, 2014 Ark. 388, at 4, 442 S.W.3d 839, 842. As a general rule, we have explained that citizens have standing to bring a "public funds" case because they have a vested interest in ensuring that the tax money they have contributed to a state or local government treasury is lawfully spent. *Brewer v. Carter*, 365 Ark. 531, 534, 231 S.W.3d 707, 709 (2006). This court has explained:

> [T]he only standing requirements we have imposed in public-funds cases is that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. *Id.* We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor

---

[11] CAPDD, which is a separate cross-appellant, filed a brief in which it addresses factual matters raised in Wilson's brief but otherwise joins in the State's arguments.



have we required the plaintiff to establish a significant tax contribution to the state treasury. *Id*. Hence, in public-funds cases we have given the word "interested" as used in article 16, section 13, a very broad construction.

*Bowerman*, 2014 Ark. 388, at 5, 442 S.W.3d at 842–43 (citing *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999)).

Here, the public funds at issue were appropriated under the challenged acts, and funds were allocated in the General Improvement Distribution Act of 2015 (Act 1146 of 2015), which established the 90th Session Projects Account (the Account) within the GIF. Pursuant to Act 1146, the Account is composed of the following: unobligated and unallocated money remaining in the GIF; general revenue funds remaining in the General Revenue Allotment Reserve Fund; interest earned on State Treasury fund balances; special revenues credited to the GIF from estate taxes as set out in Arkansas Code Annotated section 19-6-301(171) (Repl. 2016); any available balance remaining in the 89th Session Projects Account of the GIF; and any funds provided by the Arkansas Attorney General that were received by the State from settlement agreements or as designated by court order. The State argues that Wilson lacks standing because the only tax dollars contained in the Account are estate taxes, which Wilson had not paid. The State's focus on the word "tax" in Act 1146 is misplaced. The money in the GIF include general revenue funds, which consist of tax money, including sales and use taxes, individual income taxes, and cigarette taxes. *See* Ark. Code Ann. § 19-6-201 (general revenues). The fact that some of these are "carryover" funds does not detract from the fact that they were originally tax dollars. *McCafferty v. Oxford Am. Literary Project, Inc.*, 2016 Ark. 75, 484 S.W.3d 662, is inapposite because the university's cash funds at issue in that case were not generated or arising from taxation but



instead were derived from campus operations (housing, bookstore, food–services, etc.). This court has consistently required that the funds at issue in a public-funds illegal-exaction case come from taxes or implicate the state or local treasury. *See McCafferty*, 2016 Ark. 75, at 5, 484 S.W.3d at 665 (citing cases). We are satisfied that the funds at issue in this case are derived from taxes and implicate the state treasury such that Wilson, as a taxpayer, has standing.

We affirm the circuit court's ruling that Wilson has taxpayer standing in this illegal-exaction suit.

### B. Mootness

Next, the State argues that dismissal of the complaint should be affirmed for mootness. As a general rule, appellate courts of this state will not review issues that are moot. *Honeycutt v. Foster*, 371 Ark. 545, 548, 268 S.W.3d 875, 878 (2007). A case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *Shipp v. Franklin*, 370 Ark. 262, 267, 258 S.W.3d 744, 748 (2007). Here, the parties agree that the funds were disbursed to CAPDD in September 2015, and the State contends that Wilson's illegal-exaction complaint was moot for lack of a remedy when it was filed in February 2016. According to the State, injunctive relief was never a proper remedy against the State and restitution against CAPDD was never a proper remedy because CAPDD acted in good-faith reliance upon laws presumed to be constitutional. The State contends that this case is "just like" *White v. Arkansas Capital Corp./Diamond State Ventures*, 365 Ark. 200, 226 S.W.3d 825 (2006), in which this court affirmed the trial court's dismissal of a taxpayer illegal-exaction complaint as moot. In *White*, several defendant-appellees had

been awarded grants from the Economic Development of Arkansas Fund Commission in 1998 and 1999, the complaint challenging the constitutionality of the fund had been filed in 1999, and by the time the merits of the case were reached in 2004 the funds contained in the grants had already been spent and were no longer maintained by the recipients. This court held that restitution was not a proper remedy for state officials or private citizens who relied in good faith on statutes, which are presumed to be constitutional. The present case is distinguishable, because the entity receiving the state funds in this case kept an accounting of the funds received from the GIF and the parties agreed that $2,547,804 was still in CAPDD's account at the end of January 2016. We discern a significant difference between a private entity receiving a grant from the State and, having utilized the grant money, being ordered to pay restitution, and a planning and development district being granted state funds and ordered to repay funds still in its possession. Wilson does not seek repayment from persons or entities that received grants from CAPDD. We are convinced that Wilson's appeal is not moot because the cross-appellants have not shown that all of the funds at issue have been expended by CAPDD, and taxpayers would be entitled to repayment of GIF funds still in CAPDD's possession if the challenged acts are declared unconstitutional.

Furthermore, even if the case were considered moot as to the State defendants because the funds appropriated in the challenged acts have been dispersed to CAPDD, we would still address the issues presented under an exception to the mootness doctrine. This court has recognized two exceptions to the mootness doctrine, one of which concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Honeycutt v. Foster*, 371 Ark. at 548, 268 S.W.3d at 878. The issues before



us involve significant statewide public interest because they concern millions of dollars of taxpayer money. A decision on the constitutionality of these appropriations might avert future litigation, and we will address those issues raised on direct appeal.

## II. *Direct Appeal*

On direct appeal, Wilson argues that the circuit court erred in granting summary judgment to the State because the challenged acts violate both article 5, § 29 and amendment fourteen to the Arkansas Constitution. When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Washington Cty. v. Bd. of Trustees of the Univ. of Ark.*, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175 (quoting *State v. Cassell,* 2013 Ark. 221, at 4–5, 427 S.W.3d 663, 666). This court reviews a circuit court's interpretation of the constitution de novo because it is for this court to determine what a constitutional provision means. *Martin v. Kohls*, 2014 Ark. 427, at 10–11, 444 S.W.3d 844, 850. Acts of the legislature are presumed constitutional and the party challenging the statute has the burden to prove otherwise. *Id*. An act will be struck down only when there is a clear incompatibility between the act and the constitution. *Id*.

Section 29 of article 5 of the Arkansas Constitution provides as follows: "No money shall be drawn from the treasury except in pursuance of specific appropriations made by law, *the purpose of which shall be distinctly stated in the bill*, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years." (Emphasis added.) Wilson contends that the stated purpose of the

challenged acts—"grants"—fails to distinctly state how the monies will be spent, which violates article 5, § 29. In *Wilson II*, the stated purpose in each act was either to provide "state assistance" or "state aid," and this court wrote:

> We agree with Wilson that these stated purposes do not comply with the requirement of Article 5, Section 29, and this court's precedent. Our reason is simple—the mere statement that the challenged acts will be used for "state assistance" or "state aid" does not explain "how" the funds will be used.

*Wilson v. Weiss*, 370 Ark. 205, 213, 258 S.W.3d 351, 356. In that case, this court rejected arguments that a distinct purpose could be found in DFA Emergency Rule 2005-3, the boilerplate language in an emergency clause, or in the circuit court's findings. *See also Ark. Game & Fish Comm'n v. Page*, 192 Ark. 732, 736, 94 S.W.2d 107, 109 (1936) (holding that "[t]he public policy of the state is defined by its Constitution, and because of the fact that the Constitution says that the purpose of the appropriation shall be distinctly stated in the bill, we cannot permit even honesty, integrity, good intentions, progressive enthusiasm, or even successful operation to take the place of an essential or material part of the appropriation bill.").

The reasoning of *Wilson II* applies in the present case. A "grant" to CAPDD is inadequate under article 5, § 29, just as an appropriation of "state assistance" or "state aid" was held to be unconstitutional in *Wilson II*. The State argues that the purpose of the appropriations can be found in external statutes—here, Arkansas Code Annotated section 14-166-201 et seq.—where it is clear that the statutes are applicable. The State contends that in light of the statutory and regulatory mechanisms expressly governing the disbursement of funds to planning and development districts (Ark. Code Ann. §§ 14-166-

201 et seq. and DFA Rule 2005-3), the only reasonable interpretation of the "distinct purpose" of the challenged acts is to promote economic development for the benefit of the citizens of Arkansas. However, the plain language of article 5, § 29 requires the purpose of the appropriation to be distinctly stated in the bill itself. Accordingly, we reverse and remand on this point without reaching Wilson's factual allegations because the acts are facially unconstitutional.

Because we reverse under article 5, § 29, it is unnecessary to address Wilson's arguments regarding amendment fourteen (special or local legislation). *See Ark. Dep't of Hum. Servs. v. Cole*, 2011 Ark. 145, 380 S.W.3d 429.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

WOOD and WOMACK, JJ., concur in part and dissent in part.

*Cross-Appeal*

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part.** I join the majority's analysis and conclusion to affirm the circuit court on the issue of standing raised in the cross-appeal.

I dissent from the majority's conclusion that the matter is not moot as to the State of Arkansas and join Justice Womack's dissent and analysis of the mootness issue. I therefore would reverse the circuit court on the State's cross-appeal. I would affirm as to Central Arkansas Planning and Development District's cross-appeal on mootness because the record reflects CAPDD had funds at the time the action was commenced.

*Direct Appeal*

Because I agree with Justice Womack that the case against the State should be dismissed for mootness, I would only analyze the remaining issues as to CAPDD in the direct appeal. I also would hold that the acts were not local or special legislation for the reasons Justice Womack states in his opinion.

As to the constitutional challenge to the acts under Article 5, section 29, I agree with the majority's conclusion but not its analysis. We should overturn *Wilson II* to the extent it added language to our Constitution by requiring the General Assembly to also "explain 'how' the funds will be used." *Wilson v. Weiss (Wilson II)*, 370 Ark. 205, at 213, 258 S.W.3d 351, 356 (2007). No such requirement exists in the plain text of Article 5, section 29.

Additionally, I would provide further direction to the circuit court on remand. Upon remand, the circuit court should hold a hearing to determine whether any funds remain with CAPDD from the 2015 appropriation under the acts. If no funds remain, there is no further remedy available to the appellant. Repayment of spent funds is not an appropriate remedy. *See White v. Ark. Capital Corp./Diamond State Ventures*, 365 Ark. 200, 226 S.W.3d 825 (2006).

WOMACK, J., joins in part.

**SHAWN A. WOMACK, JUSTICE concurring in part and dissenting in part.** I agree with majority's analysis regarding Wilson's standing and the issue of mootness as it applies to the Central Arkansas Planning and Development District (CAPDD). I write separately because I respectfully disagree with the majority's analysis regarding the constitutionality of the challenged acts under article 5, § 29, the constitutionality under the

Fourteenth Amendment to the Arkansas Constitution regarding local or special legislation, and mootness as it applies to the separate state defendants.

## I. *Mootness*

I disagree with the majority's decision that this case falls within one of the exceptions to mootness. This Court has recognized two exceptions to the mootness doctrine: (1) issues that are capable of repetition, yet evade review, and (2) issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Keep Our Dollars in Indep. Cty. v. Mitchell*, 2017 Ark. 154, at 10, 518 S.W.3d 64, 70.

It is undisputed that the appropriated funds had already been transferred from the state to CAPDD prior to Wilson filing suit. The majority states that the case is not moot because the record indicates that CAPDD still had unspent funds in its accounts when the suit was heard below. Additionally, Wilson conceded during oral argument that the only argument he raised regarding mootness was the fact that CAPDD still had money in its accounts at the time of the hearing. Accordingly, I agree with Wilson and the majority on the issue of mootness as to CAPDD. However, as to the separate state defendants, this suit was moot on its face at the time it was filed. Being facially moot, we must then analyze whether it falls into one of the two categories of exceptions listed above.

Each of the two exceptions has two prongs. The first exception being (a) that the issues are capable of repetition *and* (b) that they evade review. While I acknowledge that the issues are capable of repetition, this case fails as to part (b) of the first exception in that these issues are not doomed to evade review if not addressed herein. Mr. Wilson, an attorney and former legislator, has demonstrated a notable proficiency in challenging acts of

the General Assembly and getting them before this court for review. The fact that he brought the current challenge in an untimely manner by filing suit after the state had already distributed the appropriated funds and rendering moot the case against the state does not preclude him from instituting a new and then timely challenge in the future should similar appropriations be passed and warrant judicial review. Lastly, I would also point out that Wilson could have brought his suit before the challenged funds were transferred to CAPDD, which is another factor that should weigh against our decision to apply an exception to the mootness doctrine.

The second exception to mootness likewise has two prongs: (a) that there be a substantial public interest in the issues being considered *and* (b) that addressing such issues, despite their being otherwise moot, would prevent future litigation. As in the first exception, only one of the two prongs of the second exception has been met here. Unquestionably, there is substantial public interest in the assurance that public funds from tax revenue and other sources accrued to the state are appropriated and managed in accordance with the law. However, addressing this issue will not prevent future litigation, and given the history on this issue with these parties it is more likely to open the door to additional litigation in the future. I would therefore hold that the case is moot as it applies to the separate state defendants.

## II. *Article 5, § 29: Distinctive Purpose*

Wilson acknowledges that he bears a stringent burden in this case. Every act of the General Assembly carries a strong presumption of its constitutionality. *Landers v. Stone*, 2016 Ark. 272, at 6, 496 S.W.3d 370, 375; *Wilson v. Weiss (Wilson II)*, 370 Ark. 205, 211, 258

S.W.3d 351, 355 (2007). If it is possible to construe a statute as constitutional, we must do so. *Landers*, 2016 Ark. 272, at 6, 496 S.W.3d at 375. Any doubt regarding the constitutionality of a statute must be resolved in favor of its constitutionality. *Wilson II*, 370 Ark. at 211, 258 S.W.3d at 355.

Article 5, section 29 of the Arkansas Constitution provides that "no money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill." We have interpreted this provision to require each appropriation to state "how" the funds will be spent instead of explaining "why" they were appropriated. *Wilson II*, 370 Ark. at 213, 258 S.W.3d at 356. The purpose must also be stated in the bill and we will not look outside the bill to provide one. *Id.* While I believe this court in *Wilson II* overstepped its role by adding qualifications for appropriations that exceeded the requirements of the constitution, and I would join Justice Wood in overturning it, I will nevertheless analyze the issue in that context because it is currently applicable law and the majority herein has chosen not to specifically overturn it.

The majority focuses only on section 1 of the challenged acts that appropriate funds from the General Improvement Fund "for grants to planning and development districts." While none of the acts contain a section distinctly labeled as "purpose," section 3 of each of the challenged acts addresses the "how" question with the following language:

> No contract may be awarded nor obligations otherwise incurred in relation to the project or projects described herein in excess of the State Treasury funds actually available therefor as provided by law. Provided, however, that the institutions and agencies listed herein shall have the authority to accept and use grants and donations including Federal funds, and to use its unobligated cash income or funds, or both available to it, for the purpose of supplementing

the State Treasury funds *for financing the entire costs of the project or projects enumerated herein.*

Act of March 244, 2015, No. 622, § 3, 2015 Ark. Acts 2521, 2522 (emphasis added).[12]

It is a fundamental canon of construction that when interpreting or construing a statute the court may consider the text as a whole to derive its meaning or purpose. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006); Antonin Scalia & Bryan A. Garner, *Reading Law: the Interpretation of Legal Texts* 167 (2012).

When looking at the entire Act, the two sections can be read together to suggest that the General Assembly appropriated funds to planning and development districts to be distributed as grants to finance the cost of its individual projects. In *Hooker v. Parkin*, we upheld a grant of funds to the Highway Department for maintenance, operation, and construction of road systems but deferred to the department to determine how to allocate the funds to each project. 235 Ark. 218, 223, 357 S.W.2d 534, 538 (1962). We noted that the only foreseeable alternative would be for the General Assembly to proscribe by law each road to be built, bridge to be repaired, materials to be used, et cetera, which the constitution clearly did not require. *Id*. The rationale in *Hooker* applies equally in these circumstances where the General Assembly wishes to provide funds to regional economic development districts for grant funding on various projects.

Finally, the majority has chosen not to reach the issue of where the challenged acts were local or special legislation in violation of the Fourteenth Amendment to the Arkansas Constitution. I would hold that they were clearly not local or special legislation and would

---

[12] *See also* Acts 514, 551, 612, 619, 654, 786, and 818 of 2015.

uphold each of them on that basis. This court has a duty to uphold acts of the General Assembly when possible, and any doubt must be resolved in favor of an act's constitutionality. I would therefore hold that the appropriations are constitutional.

I respectfully concur in part and dissent in part.

WOOD, J., joins in part.

*Mike Wilson*; and *Ogles Law Firm, P.A.*, by: *John Ogles* for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *M. Samuel Jones III*, for appellee.